William D. Palmer et al., Administrators, etc., Respondents, v. The New York Central and Hudson River Railroad Company, Appellant.

F., plaintiff's intestate, in crossing defendant's tracks while driving along a street in the village of B., was run over by an engine and killed. In an action to recover damages plaintiff's evidence showed that defendant had for many years provided gates at each side of its road at this crossing, to be shut when locomotives or trains were passing, but to be opened at other times. At the time of the accident the gates were open, and a flagman, who for twenty-five years had been stationed at the crossing was absent. F. was traveling in a covered buggy. The street crossed defendant's road at an angle of forty-three degrees; at this point there were five tracks. F. passed over three of the tracks in safety, and when crossing the fourth was struck by the engine which was running "from twenty to twenty-five miles an hour" and without giving any signal as it approached the crossing. The engine was a small one, with no car attached, used exclusively by the superintendent of the division, running on no schedule time and subject wholly to the direction of that officer. The cab occupied by him was over the boiler at the foreend of the engine; this wholly obstructed the view of the engineer and fireman while at their posts, and they did not see F or the horse and buggy until the moment of the collision. The bell was on the tender and was of a tone different from that of ordinary locomotives. The engine moved with little noise, less than that of a train engine. The duty of the engineer was only to blow the whistle or ring the bell when notified to do so by the superintendent, and at this time such direction was given only when quite near the crossing, and by the time the brakes were set and steam shut off the engine was "upon the intestate" and at the same moment the bell was rung. The view of the railroad in the direction the engine approached was obstructed, to one traveling on the street, by trees and buildings, and the engine of a freight train standing near the crossing on the track nearest the approaching traveler was discharging steam, which was blown by the wind directly across the way. *Held*, the evidence was sufficient to require the submission of the question of defendant's negligence and of contributory negligence on the part of the decedent to the jury, and that the refusal of the court to charge that, "if notwithstanding the condition of the gates he might have seen or heard the engine if he had looked or listened, and as he did not, the plaintiff cannot recover," was not error; that the open gate and the absence of the usual signals were direct and explicit assurances that no train or engine was approaching with intent to cross the street, upon which he had a right, to a certain extent, to rely; that the degree of care in such a

case was different from that ordinarily required of a traveler approaching a railroad crossing, and it was for the jury to say whether the deceased exercised that ordinary care and prudence which, under the circumstances, it would be natural to expect; that, as matter of law, F. was not chargeable with negligence in not seeing the approaching engine, and whether he looked or listened was for the jury to determine, and if they found he did not, whether, under the circumstances, if he had done so, he would have ascertained that the engine was approaching with intent to cross the highway.

(Argued December 20, 1888; decided January 15, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of June, 1887, which affirmed a judgment in favor of plaintiffs entered upon a verdict.

This action was brought to recover damages for alleged negligence causing the death of plaintiffs' intestate.

The plaintiffs sue as the administrators of one Foster, who, while driving along a highway crossed by the defendant's road, was run over by its engine and killed. The company had for many years provided gates at this crossing on each side of its track, to be shut when locomotives or trains were passing, and to be open at other times. At the time in question the gates were open. The case was tried at the Genesee circuit, and a verdict of $1,819.21 rendered for the plaintiff. A motion for a new trial was denied by the trial judge, and upon appeal to the General Term the judgment upon the verdict and the order denying a new trial were affirmed.

Further facts are stated in the opinion.

*John H. Camp* for appellant. Even though the statutory signals were not given, the uncontradicted evidence in the case shows that the injury was the result of deceased's contributory negligence. (*Slater* v. *U. B. R. R. R. Co.*, 75 N. Y. 273; *Ernst* v. *H. R. R. R. Co.*, 39 id. 61; *Wilcox* v. *R. & W. R. R. Co.*, 39 id. 358; *Tolman* v. *S. B. & N. Y. R. R. Co.*, 98 id. 198; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 652; *Woodward* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 369; *Howell* v. *N. Y. C. & H. R. R. R. Co.*, 109 id. 613; *Wilds*

v. *N. Y. C. & H. R. R. R. Co.*, 29 id. 328.)    It was the duty of the deceased to approach the crossing with care and caution, to make vigilant use of his eyes and ears, to look and listen; and if by a proper use of his faculties he could have discovered the approach of the engine on the occasion of the accident and failed to do so, he is chargeable with contributory negligence.    (*Slater* v. *U. & B. R. R. Co.*, 75 N. Y. 275; 59 id. 468; Patterson Railway Laws, §§ 173–176; *Berry* v. *Pa. R. Co.*, 5 Cent. R. [N. J.] 111.)    If his view of the approaching locomotive was in any way obstructed, he was required to exercise greater care.    (*Wilds* v. *H. R. R. R. Co.*, ·29 N. Y. 328.)    It was the duty of the deceased to look, when looking would enable him to see the track and trains running thereon.    (*Thompson* v. *N. Y. C. & H. R. R. R. Co.*, 16 State Rep. 869, 871.)    It was the duty of the deceased to approach the crossing slowly and at such a rate of speed as to be able to stop his horse before actually going upon the tracks. ·(*Wilds* v. *N. Y. C. & H. R. R. R. Co.*, 24 N. Y. 430–440; *Powell* v. *N. Y. C. & H. R. R. R. Co.*, 109 id. 613, 614.) As the deceased could have seen the approaching engine had he made an effort so to do, the presumption is that he did not look..    (*Wilcox* v. *R. W. & O. R. R. Co.*, 39 N. Y. 358; *Tolman* v. *S. B. & N. Y. R. R. Co.*, 98 id. 198; Patterson R. A. Law, § 378; *Riley* v. *C. R. R. Co.*, 135 Mass. 292; 15 Am. and Eng. R. R. Cas. 181; *Chase* v. *M. C. R. R. Co.*, ·19 id. 356.)    It is no answer to these propositions for the plaintiff ·to say that the failure of the flagman to lower the gate was an assurance to Mr. Foster that no train was approaching. ·(*Glushing* v. *Sharp*, 96 N. Y. 676; Patterson R. A. L., § 168; *P. & R. R. R. Co.* v. *Boyer*, 2 Am. and Eng. R. R. C. 172; *Sheldon* v. *L. & N. W. R. R. Co.*, 2 Com. Pleas Cas. ·631; *Wilcox* v. *R. W. & O. R. R. Co.*, 39 N. Y. 358; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 id. 468; 63 id. ·522; *Berry* v. *P. R. R. Co.*, 5 Cent. R. [N. J.] 111; *Ernst* v. *H. R. R. R. Co.*, 35 N. Y. 49; 39 id. 365.)    As the evidence shows deceased could have seen and heard, the presumption is he did not use his eyes or ears.    (39 N. Y. 358;

98 id. 198; Patterson R. A. L., § 378; 15 Am. and Eng. R. R. C. 181; 19 id. 356.) The damages, under the circum-stances, were excessive, and a new trial should be granted upon that ground. (*Leman* v. *City of Brooklyn*, 29 Barb. 239; *Houghkirk* v. *President*, etc., 92 N. Y. 225; *Carpenter* v. *B. N. Y. & P. R. R. Co.*, 38 Hun, 116.)

*William Tyrrell* for respondent. As, at the time of the accident, the flagman was absent and the gates were not low-ered to warn Mr. Foster of the approach of the engine, defend-ant was clearly negligent. (*McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y. 468; *Dolan* v. *D. & Hudson Canal Co.*, 71 id. 285; *McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 id. 417; *Kissenger* v. *N. Y. C. &. H. R. R. R. Co.*, 56 id. 538; 2 R. S. [7th ed.] 1585, § 7; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 518.) It was a question for the jury to determine whether, under the facts and circumstances in the case, the intestate was guilty of contributory negligence in causing the accident which resulted in his death. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 518; *Greany* v. *L. I. R. R. Co.*, 101 id. 419, 423; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 72; *Shaw* v. *Jewett*, 86 id. 616; *Sherry* v. *U. T. C. Co.*, 104 U. S. 652, 656; *Smedis* v. *B. & R. B. R. R. Co.*, 88 N. Y. 13–19; *Crainton* v. *N. Y. C. & H. R. R. R. Co.*, 39 Hun, 308; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289; *Ryan* v. *N. Y. C. & H. R. R. R. Co.*, 37 Hun, 186; *Northrup* v. *N. Y. C. & H. R. R. R. Co.*, Id. 295; *Salter* v. *U. & B. R. R. R. Co.*, 88 N. Y. 42; *Glushing* v. *Sharp*, 96 id. 676.) When a part of a request to charge is good and a part bad, the court is not called upon to separate the good from the bad. (*Hamilton* v. *Eno*, 81 N. Y. 116–127;. *Doughty* v. *Hope*, 3 Denio, 594; *Magee* v. *Badger*, 30 Barb. 246; *Keller* v. *N. Y. C. R. R. Co.*, 24 How. 172–183; Baylie's Trial Practice, 237.) If it is too broad, or a part is good and a part bad, the court may refuse to charge the request *in toto*. (*Keller* v. *N. Y. C. R. R. Co.*,

24 How. 172–183; *Carpenter* v. *Stillwell*, 11 N.Y. 61; *Wright* v. *Paige*, 36 Barb. 438–443; Baylie's Trial Prac. 237.) It was proper to submit the question of contributory negligence to the jury. It was for the jury to determine whether the deceased exercised that care which the law required of him. He is not bound to see, but is bound to use all reasonable care that a prudent man would under like circumstances. (*Greany* v. *L. I. R. R. Co.*, 101 N. Y. 419–425; *Shaw* v. *Jewett*, 86 id. 616; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 518–523.) It cannot be presumed that, because there is no evidence affirmatively showing that the deceased either looked or listened, he did not look or listen, and was, therefore, negligent. (*Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524.) It is proper to submit the question of contributory negligence to the jury, although there is no direct proof as to the precautions the deceased took before crossing the track. (*Smedis* v *B. & R. B. R. R. Co.*, 88 N. Y. 13; *Cranston* v. *N. Y. C. & H. R. R. R. Co.*, 39 Hun, 308.) The fact that the gates at the crossing were up at the time the deceased approached the crossing was a substantial assurance to him of safety. (*Glushing* v. *Sharp*, 96 N. Y. 676; *Lindeman* v. *N. Y. C. & H. R. R. R. Co.*, 42 Hun, 306; 3 N. Y. State Rep. 731; 11 id. 837; *East. R. W. Co.* v. *Wanless*, L. R., 7 H. L. 12; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 652, 655; *Taylor* v. *Railroad Co.*, 137 Mass. 238; *Wheelock* v. *Railroad Co.* 105 id. 203; *Sonier* v. *Railroad Co.*, 141 id. 10.)

DANFORTH, J. The points made by the appellant are, that the court erred (1st) in refusing to grant defendant's motion for a nonsuit; (2d), in refusing to charge as requested by it, viz.: " That the fact that the gates were not down was not such an assurance of safety to the intestate as obviated the necessity of using his eyes and ears to ascertain whether a train or engine was approaching, and if, notwithstanding the condition of the gates, he might have seen or heard the engine if he had looked or listened, and as he did not, the plaintiff cannot

recover;" and (3d), that the damages allowed by the jury were excessive, and entitle it to a new trial. The last proposition requires no consideration, for the question was exclusively for the jury and the Supreme Court. The motion for a nonsuit was reserved until after the defendant put in evidence to meet the plaintiff's. case, and the special ground then urged was, that it affirmatively appeared that the plaintiff's intestate was guilty of contributory negligence. It appeared in evidence that Foster, on the 24th of May, 1884, was traveling southward with horse and covered buggy at the rate of from four to five miles an hour, along a highway known as Walnut street, in the village of Batavia. The street ran north and south, and in his way was crossed by defendant's road of five tracks running east and west, at an angle with the street of forty-three degrees. He passed three of the tracks in safety, but while on, and in part over the next, was struck by defendant's locomotive, which was running along that track westerly, very fast, " or from twenty to twenty-five miles an hour," without signal. He and his horse were at once killed, and the buggy broken in pieces. This is not an unusual narrative in collision cases, but the attending circumstances were somewhat exceptional. The engine was attached to no train or car. It was small in size, much smaller than the ordinary locomotive. It was neither designed nor used for passenger or freight business. It was running on no schedule time. It was in charge of no conductor. It carried one person, the superintendent of the division, and was subject wholly to his direction. It was manned by an engineer and fireman, but the construction of the engine was such that the cab occupied by the superintendent was over the boiler at the fore end of the engine, and the engineer and firemen were behind. Their view in front was thus wholly obstructed, except as the lines of vision were outside of the cab; and down and along the track they could have a sight of nothing except as they leaned out and away from their place. In fact, as each testifies, neither the fireman nor engineer saw the man, horse or buggy until the

moment of the collision. The bell, instead of being on the top of the engine, was, as some testify, behind and below it, or, as the engineer says, " on the tail end of the engine, on the top of the tender." It was of a tone different from that of ordinary locomotives, and the machine itself moved with little noise and with less than that of a train engine. It was used for the business of the occupant, either of observation or travel, and was so constructed as to facilitate either. As its use and construction differed from that of ordinary locomotives, so did its management. Instead of obedience to the statute which requires the bell or whistle to be rung or sounded at a given distance from the place where the railroad shall cross any traveled public road or street, and at intervals until it shall have crossed that road or street, and so makes the presence of the crossing an imperative order to the managers of the engine, it was made the duty of the engineer to blow the whistle only when notified to do so by his passenger, the superintendent, and in this instance such direction was given only when quite near the crossing, and by the time the brakes were set and steam shut off the engine was " upon " the intestate.

The plaintiffs' witnesses show that at the same moment the bell was for the first time rung. One of them watching the locomotive," did not notice any bell ringing until the whistle began to blow, about half way between the bridge and the crossing; then the bell rang and the whistle blew." This was a short distance from the point of danger. Concerning the bell there was evidence from the engineer and fireman to the contrary, but none from the superintendent, who was not called to testify. There was evidence enough to warrant the jury in finding that no signal of any kind was given. They would have been compelled to say that the construction of the locomotive was such as to render vigilance on the part of the employes almost, if not wholly, useless; that the position of the bell was less favorable to the distribution of sound than the place assigned to it by statute; and that the engine itself gave little or no notice of its approach. The flagman also, who for twenty-five years had

been stationed at the crossing, was absent.   This was conceded.
But besides these things, which are to be regarded as omissions
or departures from the ordinary and in some respects required
methods of the defendant's business, in giving audible or visi-
ble signals of approach, and indicating negligence on its part,
there are affirmative acts, not only compelling the same con-
clusion, but directly tending to influence the conduct of the
wayfarer, and, indeed, expressly designed to do so.   The defend-
ant " for the better protection of life," and to " promote the
safer and better management of its road," either of its own
volition or under the command of law (Laws of 1884, chap.
439, § 3), had erected gates across Walnut street on either side
of its tracks, and had stationed a person there " to open or close
such gates when an engine or train passed."

The duty of the company was imperative, and it is obvious
that an open gate was a direct and explicit assurance to the
traveler that neither train nor engine was rendering the way
dangerous — that none was passing.   A closed gate was an
obstruction preventing access to the road; an open gate was
equally positive in the implication to be derived from it that
the way was safe.   Nothing less could be implied and no
other conclusion could be drawn from that circumstance.
The silence of the bell and whistle was an indication that no
train or locomotive was within eighty rods of the crossing; the
open gate an affirmative and explicit declaration and repre-
sentation that neither train nor locomotive was approaching
with intent to pass.   The way, then, was open to the intestate,
and as the highway was straight, that fact was apparent to
him, not only when he reached the track, but for a long dis-
tance off.   He had a right to rely to a certain extent upon
that representation.   (*Stapley* v. *Railway*, 1 Ex. L. R. 21;
*Glushing* v. *Sharp*, 96 N. Y. 676.)   It is difficult, therefore,
to see how his death can be attributed to any other cause than
the negligent acts of the defendant.   But if there is room for
a different inference, there is not enough of it to make the
question one of law.   He could not rush heedlessly on to

danger and ·throw the result upon the defendant, but the degree of care required of a traveler is increased or diminished by the greater or less probability, suggested by the circumstances about him, that without it an injury will happen. When, therefore, he moves on upon the track under an assurance of safety from those owning it, and from their servants, whose especial duty it is to keep their attention fixed upon it, and who have within their power the means of avoiding the infliction of injury, and whose business it is to use them so as to prevent danger, it is for the jury to say whether the traveler exercised that ordinary care and prudence which under the circumstances it would be natural to expect.

The cases above referred to (*Stapley* v. *Railway*, *Glushing* v. *Sharp*), if any are necessary in support of so plain a proposition, are sufficient for that purpose. But notwithstanding the defendant by its conduct assured the intestate that no engine or train was approaching, and so invited him to go over its tracks, it is contended by the defendant's counsel that the intestate was yet bound to keep a lookout against danger; that if he did so he must have seen the engine in time to have avoided it; and that he either did not look, or did see the engine and, therefore, went on at his peril. The claim at the trial was that the plaintiff's negligence was affirmatively shown. There is no evidence that he did not both look and listen. The question was left to the jury by a charge to which no exception was taken, and we think the learned judge committed no error in submitting it. The evidence shows that to a traveler coming from the north the view at the railroad toward the east was obstructed by apple and maple trees in full leaf, by buildings of various kinds, some belonging to the railroad company, while at the west, on track four, the track nearest the approaching traveler, not far from the crossing, a freight train stood, its engine taking water and discharging steam from the escape valves, and a stiff breeze blowing from the south-west, and so bringing the steam directly in the way. It was possible, notwithstanding, at certain points, to get a glimpse of the railroad at the east,

and from lines and measurements exhibited by a surveyor, and the observations of other persons, we are asked to say, as matter of law, that the intestate, in not seeing the engine, was guilty of negligence. The size of the engine, its construction, permitting, if seen, the inference that it was going away from the crossing, and not coming towards it; the presence of a train on the track nearest the traveler; the obstructions to the view; and, above all, the absence of the flagman and the extended arms of the gates and the way thus made open, are all to be considered, and their consideration was for the jury. The conduct of the intestate might have been influenced by them, and to what extent, it was for the jury to determine. (*Kellogg* v. *N. Y. C. R. R. Co.*, 79 N. Y. 72; *Shaw* v. *Jewett*, 86 id. 616; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 652.)

We see no ground on which the court could say the intestate did not use reasonable care in approaching the crossing. The request to charge involves the assertion that the intestate neither looked nor listened, and so, was erroneous. Whether he looked or listened, was for the jury to determine (*Smedis* v. *B. & R. B. R. R. Co.*, 88 N. Y. 13; *Kellogg's Case*, *supra*); and if they found he did not look or listen, to say whether, had he done so, it would have been possible for him to have seen or heard the approaching engine in time to avoid it. (*Thompson* v. *N. Y. C. & H. R. R. R. Co.*, 110 N. Y. 636.) If he looked and listened, it was for the jury to say whether he saw the machine on the track, and if he did, whether by its position and appearance he was informed that it was an engine approaching the crossing, or whether, from the ituation of the cab and the absence of signal, he might be led to believe it was going from, and not toward, the crossing; and whether, adding to these circumstances the open gates, he might not reasonably believe, and with ordinary prudence govern himself by that belief, that whichever way it was moving, it was not intending to pass the highway. These circumstances were of the defendant's creation. They indicate not only omissions

of duty, which, when performed, are designed to notify the traveler of his danger, as by signal, but affirmative acts assuring him that no danger exists, as in the going off of the flagman and the raising of the gates. I do not think the court can say as matter of law, that the statutes which require signals and precautions can be disregarded by the defendant, and it be allowed to claim that the traveler should not be influenced by these omissions. While the court could not as matter of law, say that the plaintiff did not look, neither would that fact, if found, enable it to say as matter of law that negligence on his part was established. (*Terry* v. *Jewett*, 78 N. Y. 338; *Brassell* v. *N. Y. C., etc., R. R. Co.*, 84 id. 241.) In the first case an intending passenger, and in the last a passenger leaving the cars, was injured. It was held that each had a right to assume that the company would not expose him to unnecessary danger, and while he must himself exercise reasonable care, his watchfulness would naturally be diminished by his reliance upon the discharge by the company of its duty to provide a safe passage to and from the trains. The duty there referred to was obedience to the common-law obligation to conduct its business with reasonable care not to injure another. In the case before us we have superadded the provisions of positive law designed to regulate the conduct of corporations created by it. Effect must be given to these wise regulations concerning measures to be adopted by a railroad company for the safety of the traveler. He is not bound to wholly discredit the assurance of the servants of the company, that the conditions which require those regulations to be observed do not exist. In general, it may be imprudent to enter upon a track while a locomotive is approaching. Whether it is so in a particular case must depend upon the circumstances under which the attempt to cross is made. And where, though in fact it may be hazardous, a traveler does so in consequence of the acts of the defendant, he cannot be charged with negligence unless the risk or danger was apparent. In this case the engine, although in motion, made no signal that it was to pass

the crossing, but a signal was given by its owner that it was not to pass. The track and the moving engine were signs of danger, but the engine, although moving, was not dangerous unless it passed the crossing ; as to that he had assurance that it was not, from the silence of the bell and whistle, and positive and affirmative assurance from the open gates. The effect of such assurances from employes, of the non-existence of danger is exemplified, among many others, in *Filer* v. *N. Y. C. R. R. Co.* (49 N. Y. 47); *Foy* v. *Brighton R. Co.* (18 C. B. [N. S.] 225) where by direction of an employe a passenger left a train while it was in motion; in *McIntyre* v. *N. Y. C. R. R. Co.* (37 N. Y. 287), where, under like circumstances, a passenger went from one moving car to another; in the *Glushing Case (supra)*, where the traveler went on the track through an open gate under circumstances which, except for that, disclosed negligence on his part.

In all these cases it was regarded as an important element in the case that the defendant had involved the plaintiff in his attempt. The facts before us, therefore, fall short of requiring, as the sole inference from them, that a want of ordinary care on the part of the intestate contributed to the injury. Whether it did or not was a question depending upon all the circumstances of the case. (*Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 65.) Negligence cannot be presumed; and where by the act of the defendant a person has reason to believe that he may cross the track in safety, his attempt to do so and his lack of that vigilance which under other circumstances might be required, cannot be regarded as constituting negligence. He is still bound to exercise ordinary and reasonable care, but the measure of his duty varies with the peculiar circumstances of the case, and its fulfillment must be determined by the jury.

This conclusion disposes of both questions raised by the appellant and requires an affirmance of the judgment from which it appeals.

It should be affirmed, with costs.

Peckham, J. (dissenting). I dissent from the conclusions arrived at by the court in this case. As I understand it, the uncontradicted evidence showed that there was for a distance of seventy feet before reaching the tracks a wholly unobstructed view up and down, so that anyone approaching them could, if he had looked, have seen an engine thereon in ample time to have stopped in a place of perfect safety until it had passed. Notwithstanding the fact that the gates were open a person intending to cross the tracks, in broad daylight, was not relieved from the necessity of using his eyes to make sure that he could cross in safety. Had he looked he must have seen this engine coming rapidly towards the crossing, and if he then undertook to cross ahead of it, his failure to do so was at his own risk. If he did not see the engine, it must have been because he did not choose to look, and his omission to do so was also a risk, the consequences of which he took upon himself.

I think the plaintiff should have been nonsuited, and that, consequently, this judgment should be reversed.

All concur with Danforth, J., except Peckham, J., dissenting; Earl and Gray, JJ., concurring in result

Judgment affirmed.