FREDERICK SHULTZ, Respondent, *v*. THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY, Appellant.

*Duty of a traveler approaching a railroad crossing — open gates.*

The duty which ordinarily rests upon a person approaching a railroad crossing,
to both look and listen before crossing the tracks, may be modified by circum-
stances constituting an assurance of safety, such as the fact that gates main-
tained at the crossing are open.

The fact, however, that a gate maintained by a railroad company at a crossing is
open when a traveler is approaching the track does not relieve the traveler
from taking proper precautions for his own safety ; it is still his duty to be on
the lookout for danger, and to exercise the same care that a man of ordinary
prudence would exercise under the same conditions.

APPEAL by the defendant, the New York Central and Hudson
River Railroad Company, from a judgment of the Supreme Court
in favor of the plaintiff, entered in the office of the clerk of
Columbia county on the 1st day of February, 1892, upon a verdict
rendered at the Columbia Circuit, and from an order denying the
defendant's motion for a new trial made upon the minutes.

*Frank Loomis* and *L. F. Longley*, for the appellant.

*J. Rider Cady*, for the respondent.

HERRICK, J. :

This is an appeal from a judgment in favor of the plaintiff against
the defendant ; the action is founded upon the alleged negligence
of the defendant, whereby the plaintiff was injured by an accident
which happened at Germantown, in this State. The road of the
defendant at that point runs north and south. The station is on the
west side of the tracks ; the tracks are crossed at two places, one
north and the other south of the passenger station. The south
crossing is a highway running east and west ; on the east side of
the defendant's track, and upon land owned by the defendant, there
is a roadway leading from the south to the north crossing, about 104
feet in length. It crosses the railway track, passes around the pas-
senger station of the defendant, and thence goes south until it
reaches the south crossing. The west line of this road was about
three feet east of the easterly rail of defendant's track. The road-

way was about eighteen feet in width. The traveled portion of it was the easterly part thereof and was between nine and ten feet in width.

The defendant had gates at both the upper and lower crossings, but for some cause they were disabled and had not been in use for some two or three months before the happening of the accident in question, although it appears that upon the day of and after the accident, the gates were both lowered and raised. Upon the highway coming towards the defendant's station from the east, and which is known as the Germantown road, and at a distance of from 200 to 250 feet from the defendant's station, there is an elevation from twenty-five to thirty feet in height, and at that point the highway makes a bend to the north as it comes down the hill, and at the foot of the hill it makes another turn to the west and crosses the tracks at the south crossing before spoken of. On the way down the hill and for at least 180 feet before the south crossing is reached, there is an unobstructed view of the defendant's tracks south for a distance of between three-quarters of a mile and a mile. The whistling post, as it is termed, is about eighty rods south of defendant's station.

On the 7th day of April, 1891, the plaintiff was coming over this Germantown highway with a horse and wagon, bringing a calf to defendant's station to ship over defendant's road. On his way he picked up a neighbor who had some parcels with him and brought him along. He testifies that as he came down the hill approaching the station he looked or listened, he does not say which, but did not perceive the approach of any train. As he arrived at the south crossing and a few feet from the rails of the defendant's tracks, he stopped to let his passenger out, and then started north along the roadway to the east of the defendant's tracks to reach the freight depot. He says that just as he started for the upper crossing he looked to the south but saw no train approaching, and as he arrived near the north crossing one of the defendant's station men hailed him and told him that a train was coming; his horse became frightened, backed towards the direction of the tracks; almost immediately thereafter the wagon was struck by a train coming from the south, the plaintiff thrown from the wagon and seriously injured.

The plaintiff testifies that he passed over the south crossing twice a day almost every day during the months of January and February preceding the accident, going to and from an ice house upon the river bank near by, where he was employed.

It does not appear from the evidence whether he did or did not know the crossing gates were disabled, but he states that some time in January or February he remembers having seen them closed; that in coming to and from the ice house when he got to the top of the hill before spoken of, if he saw the gates open he drove on. "I saw when a train was in sight the gates were lowered, and when a train was past, they would be opened. I have seen them down when they approached the track, and when I saw the gates down some train went past, but never saw a train go by when the gates were standing open." He also stated that the day of the accident when he got to the top of the hill, he observed that the gates were open; that as he approached the north crossing, he also observed that the gates there were open. The horse the plaintiff drove was one which was afraid of the cars. The testimony shows that as the train was approaching, the whistle was blown at the whistling post, and the bell was rung from that point until the accident happened; but the plaintiff asserts that he heard neither the bell nor the whistle. The passenger who was with the plaintiff states that as they were coming down the road, from the hill, he saw the train approaching, and also saw it approaching when he got out of the wagon, but that he did not mention it to the plaintiff. At the close of the plaintiff's testimony the defendant moved for a nonsuit, on the ground that the plaintiff had failed to show any negligence on the part of the defendant, and failed to show freedom from contributory negligence on his own part; the motion was denied, and was again made at the close of all the evidence in the case, and was again denied, and the jury rendered a verdict for the plaintiff.

Ordinarily it is the duty of a person approaching a railway crossing to both look and listen before crossing the tracks, to discover whether there is any approaching train or engine which may endanger his safety while crossing. The evidence of the plaintiff is not satisfactory in that respect, and if there was no other element in the case I would be inclined to hold that he did not sufficiently discharge his duty in that behalf; but the duty of both looking and

listening may be modified by circumstances; assurances of safety may be held out that will throw the traveler off his guard, and wittingly or unwittingly cause a non-compliance upon his part with those measures of safety which, under ordinary circumstances, a neglect to comply with, would justly prevent him from holding others responsible for resulting injuries. As it is said in *Palmer* v. *The N. Y. C. & H. R. R. R. Co.* (112 N. Y. 234–241): "It is obvious that an open gate was a direct and explicit assurance to the traveler that neither train nor engine was rendering the way dangerous; that none was passing. A closed gate was an obstruction preventing access to the road; an open gate was equally positive in the implication to be derived from it, that the way was safe."

Still, the fact that such gate was open does not relieve the traveler from taking proper precautions for his own safety. It is still his duty to be on the lookout for danger and to exercise the same care that a man of ordinary prudence would have exercised under the same conditions. (*Oldenburg* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 414–418.)

The traveler is still bound to exercise ordinary and reasonable care, but the measure of his duty varies with the particular circumstances of the case, and its fulfillment must be determined by the jury. (*Palmer* v. *N. Y. C. & H. R, R. R. Co.*, 112 N. Y. 245.)

The assurance of safety given by open gates may also be modified or increased by circumstances, as when they are opened in the view and presence of the approaching traveler.

In this case it appears that the gates were partly or wholly disabled, although they were both opened and closed on the day of and after the accident. It also appears that the plaintiff was entirely familiar with the crossing; that for a long period of time he had been in the habit of passing over it. There is no evidence in the case whether he knew or did not know that the gates were out of repair. It may possibly be inferred from his testimony that he placed some reliance upon the fact that the gates were open, because he testifies that in approaching the defendant's road, when he arrived at the top of the hill, if he saw the gates were open, he drove on, and upon the day in question, when he was at the top of the hill, he saw that the gates were open, and he also testifies that in the month of January or February, he is not certain which, upon

one occasion he saw the gates closed. Under all the circumstances, it seems to me that, upon both branches of the case, the questions raised are peculiarly ones. for a jury to pass upon.

Upon the evidence presented to them, while not entirely satisfactory, I think I would not be warranted in saying that, as matter of law, the plaintiff did not take all the precautions necessary to free himself from the charge of contributory negligence, or to say, as matter of law, upon the evidence, that the defendant was free from negligence. The charge as a whole presented the case fairly for the consideration of the jury.

The judgment should be affirmed, with costs.

PUTNAM, J.:

The case is a doubtful one. It is not clear that the evidence was sufficient to sustain a verdict establishing negligence on the part of defendant, or freedom from negligence on the part of plaintiff. It is, however, for the interests of the parties that the questions involved should be authoritatively settled by the Court of Appeals, and I, therefore, though doubtingly, concur.

MAYHAM, P. J., concurred in result.

Judgment affirmed, with costs.