MARY B. FRENCH *vs.* TAUNTON BRANCH RAILROAD.

Bristol.    Oct. 28, 1874. — Jan. 21, 1875.    COLT & AMES, JJ., absent.

In an action against a railroad corporation, for injuries occasioned by a train coming into collision, at a highway crossing, with a carriage in which the plaintiff was driving in the daytime, it appeared that the plaintiff, in attempting to cross the track, was struck by a car of a freight train which had been separated from the rest of the train for the purpose of making a running switch. The plaintiff's evidence tended to show that she was driving with care, and, in approaching the crossing, saw a train pass, but saw no flagman and received no warning that another car was coming. At a point forty-six feet from the crossing she could have seen along the track forty-six feet in the direction from which the car came; at thirty feet from the crossing, she could have have seen the track for more than half a mile, but she did not look in that direction from those points, and gave as a reason therefor that she did not suppose that one train would follow another so closely. *Held*, that the question whether the plaintiff was in the exercise of due care was for the jury.

TORT to recover for personal injuries sustained by the plaintiff and for injury to the plaintiff's horse, alleged to have been caused by the negligence of the defendant in the management of its train and by its failure to maintain a suitable flagman or signal to give warning of the approach of trains at a point upon a highway in Taunton which is crossed at grade by the road of the defendant. Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff testified: " I am sixty-seven years of age. The accident happened at about four in the afternoon. When I came to the bend in the road, several rods from the crossing, I saw

the rear car of a freight train passing down over the crossing. I had a light, open carriage, and an old horse that I had driven for ten years. I was going four or five miles an hour. I was looking ahead, and went ahead without stopping; there was no obstruction in the way. When my horse stepped on to the track, I heard a man shout and looked round. I saw a car near me coming down the railroad; man on it. That's all I know. It was coming quite fast. I was unconscious for some time after. The next I knew I was lying in the road, with blood on my face, and severe pain in my head. I was holding the reins. My grandson was with me; he is thirteen years old. There was no warning in the highway; if there had been a bird there, I should have seen it; no person or flag visible; if there had been, I should have seen it."

*Cross-examined:* " I looked straight ahead all the time from the bend in the road till my horse got on to the crossing; I did not look up or down the track; I did not turn my head or eyes to the right or the left. I suppose if I had looked up the track just before I reached it, I might have seen the car; the reason why I did not was because I never knew one train to follow another so closely; that was the only reason; I presumed there would be nothing coming so close. There was nothing to prevent my looking up the track just before I reached it, that I know of."

Everett C. Pierce, the grandson of the plaintiff, testified as follows: " I am thirteen years old ; was in the carriage with grandmother; coming round the bend of the road, I saw the rear end of the train, the last part of one car. The horse stepped on to the track, when I heard a man halloo, and the car was right on us. I found myself on the car, a flat car, loaded with scrap-iron; the car stopped; I saw my grandmother on the end of the car; saw no one in the road, no flag."

*Cross-examined:* " I did not look up or down the track; looked straight ahead. After I saw the last car of the train pass the crossing, I asked my grandmother if it was safe to cross, and she said 'Yes.' That was all either of us said."

The car struck the carriage and threw the plaintiff and her grandson on to the car with great violence, injuring the plaintiff severely. The car was a portion of a freight train, which before

reaching the crossing had been divided into three parts, for the purpose of making a " running switch," or of throwing the car, which was the middle of the three parts, on to a turn-out below the crossing by its own momentum.  At a distance of forty-six feet from the centre of the track, a person could see forty-six feet up the track in the direction in which the car was approaching, and at a point thirty feet from the track there was, at the time of the accident, a clear and uninterrupted view up the track for a distance of over half a mile.

There was evidence tending to show that the defendant corporation had cut away some bushes from the angle made by the railroad and the highway, and which was between the plaintiff and the approaching car, at some time between the accident and the trial.   There was a sign-board at the crossing, as required by statute, and there was usually a flag displayed at the crossing; but as to whether it was so displayed at this time, the evidence was conflicting.   There was no evidence that a gate or flagman had been ordered or requested by the city or county authorities, according to the statute provisions, but it appeared that the defendant had maintained a flagman there for some time before the accident.

The above was all the evidence upon the question of the care or negligence of the plaintiff.   The jury viewed the locality. At the close of the testimony, the defendant requested the judge to rule that, as matter of law, the plaintiff had shown such carelessness as to deprive her of her right to recover, and asked for specific rulings as follows : " 1. If the jury believe from the evidence that the plaintiff approached the railroad crossing without looking along the track in either direction to see if a train or car was approaching, and that if she had so looked she would have seen the car in season to have avoided the collision, and might have so avoided it, she cannot recover. 2. It was incumbent upon the plaintiff to look along the track before she crossed, if she could do so by simply turning her eyes to one side, and her failure so to do would preclude her from recovery in this suit, if such failure contributed to the accident.   3. The presumption that no car would follow closely to the train which had passed the crossing afforded no excuse to the plaintiff for not so looking along the track.   4. There is no evidence for the jury that the plaintiff was in the exercise of due care."

The judge declined to give the third and fourth instructions requested, refused to take the case from the jury, and instructed them as follows : " By the uncontroverted evidence, it appears that the injuries to the person and property of the plaintiff in this case were caused by a car which had been cut off from its train, (the engine and four cars having passed the crossing,) and which car was following at some distance without an engine, and that the plaintiff saw the last of the said four cars in motion, and after it had passed the crossing.  These being uncontroverted facts, I must decline to give you the following instructions requested by the defendant, which under other circumstances I might have given, viz.," (here the presiding judge read the first and second requests for rulings above set forth,) " but must leave the question of due care on the part of the plaintiff to the jury under the ordinary instruction, to wit : That, to sustain her action, the plaintiff must prove among other things affirmatively, the burden of proof being upon her, that she was in the exercise of due care, and that no want of due care on her part contributed to the injury."

The judge gave instructions as to what would constitute due care, to which no exceptions were alleged.  The jury found for the plaintiff, and the defendant alleged exceptions.

*G. A. Torrey*, for the defendant.

*G. Marston*, for the plaintiff.

ENDICOTT, J.   This case was properly submitted to the jury. The circumstances were peculiar.  As the plaintiff approached the crossing, a freight train was passing ; and after the last car had passed, she attempted to cross.  She was driving with care and watching the road ; she heard no signal, received no warning that other cars were coming, and saw no flagman.  At a point forty-six feet from the centre of the track, she could have seen up the track forty-six feet ; at thirty feet from the crossing, she could have seen the track for a long distance.  She did not look in that direction when she reached those points, and gave as a reason that she did not suppose that one train would follow so closely upon another.  She was struck by some cars which had been purposely detached from the train that had passed, and which, without warning of their approach, followed the train over the crossing.  Of the negligence of the defendant, upon her evi-

dence, there can be no question. Whether the plaintiff was in the exercise of that due care which persons of common prudence and intelligence would exercise when placed in a similar situation, and whether she was careless in failing to look up the track at the points near the crossing where it was visible, was a question for the jury to determine in the peculiar circumstances of the case. *Wheelock* v. *Boston & Albany Railroad*, 105 Mass. 203. *Allyn* v. *Boston & Albany Railroad*, Ib. 77. *Chaffee* v. *Boston & Lowell Railroad*, 104 Mass. 108. *Exceptions overruled.*