# The Pennsylvania Railroad Company *versus* Coon.

1. So long as a railroad company makes it safe for the public to cross
its road on the public highway by gates, watchmen or other means, it
may run its trains at any rate of speed over such crossings; but if it
neglects to use every precaution necessary for the safety of the public,
no moderation or slowness of speed will excuse its neglect.

2. Negligence is want of ordinary care under the circumstances. No
fixed rule of duty applicable to all cases can be established. When the
standard of duty shifts not according to any certain rule, but with the
facts and circumstances developed at the trial, what constitutes negli-
gence cannot be determined by the court, but must be submitted to the
jury. When a duty is defined, a failure to perform it is negligence, and
may be so declared by the court.

[Pennsylvania Railroad Co. *v.* Coon.]

3. Detached portions of the charge of the court, and especially only a part of a sentence, should not be assigned for error. They should be read in their connection with other parts of the charge, and with the charge as a whole. If the charge as a whole is a correct and adequate presentation of the case to the jury it will be affirmed.

January 7th, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term, 1885, No. 70.

This was an action on the case brought by Eliza Coon against the Pennsylvania Railroad Company, to recover damages for the death of her husband, Isaac Coon, who was killed by being struck by a locomotive while he was crossing the track of the defendant's railroad at Orthodox street and Trenton avenue, in Frankford, Pa.  The defendant pleaded not guilty.

On the trial before THAYER, P. J., the following facts appeared :  At about half-past ten at night on the 10th of August, 1883, Isaac Coon, the husband of the plaintiff, was about to cross Trenton avenue at Orthodox street, in Frankford, on which avenue the railroad of the defendant is laid with four tracks.  He stepped on the curb to let a freight train pass, which was running east on the third or fourth track from him. As soon as it was passed he stepped from the curb and walked to the first rail of the first track, where he was struck and killed by a train coming west, running at the rate of between thirty and forty miles an hour.  From the time he stepped from the curb until he reached the rail he had to traverse twelve to fifteen feet, and at any point of this space he had a clear, uninterrupted view of the track for about three quarters of a mile.  The crossing was on the built up portion of Frankford.  There was no gate at the crossing.  The watchman who was stationed there usually went home about ten o'clock.  At the time of the accident there was no watchman there.  The testimony was conflicting as to whether Coon stopped after leaving the curb ; there was no evidence as to his looking and listening.  The testimony was conflicting also as to whether the bell on the locomotive had been rung.  The whistle blew just as he reached the track. ' The witnesses fix the spot at which it blew at about forty-five feet from where he was struck.  Neither the plaintiff nor the defendant presented any points for charge.

The court charged the jury as follows :

Isaac Coon, according to the evidence, was killed by an accident on the Pennsylvania Railroad on the 10th of August, 1883, at about half past ten o'clock at night, while he was crossing the track of the railroad at Orthodox street and Trenton avenue, in the borough of Frankford.

[Pennsylvania Railroad Co. *v.* Coon.]

This action is brought by his widow to recover the pecuniary damages which she has suffered for the loss of his life. And while I am upon that subject I may as well state to you that the Act of Assembly which has already been referred to enacts that only such damages shall be given for a loss of life, under such circumstances, as the evidence clearly proves the plaintiff to have *pecuniarily* suffered. That is, the damages given in such cases are to be restricted to the pecuniary loss of the plaintiff. Nothing is to be given, therefore—of course it would be vain to give anything—by way of consolation, anything of that kind to atone for the domestic loss of her husband. The law confines the damages to the pecuniary loss of the parties suing.

The two questions in the case are, whether the death of Isaac Coon was the result of any negligence on the part of the defendant company, and whether Isaac Coon himself exercised ordinary caution in attempting to cross the track at that point and at the time that he did. If his death is due to the defendants' negligence, the plaintiff is entitled to damages, provided he exercised due precaution himself. Due precaution in crossing a railroad track consists in looking out for yourself. It is every man's duty to stop, look and listen when he approaches a railroad track, to see if any train is approaching; and the man who neglects so plain a precaution as that is guilty of contributory negligence, and in such a case no recovery can be had. In such case the plaintiff who represents him cannot recover, notwithstanding the death may have been attributable in some measure to the negligence of the company. He must himself, in other words, have been free from blame in order that the plaintiff in the action may recover.

The question, therefore, with regard to him—Isaac Coon— is whether he took those precautions on this occasion or not. Whether he stopped, looked and listened, as he approached the track, and exercised that ordinary caution which a reasonable man would take to avoid danger under the circumstances. If he did that, he was not guilty of contributory negligence; if he neglected it, he was guilty of it, and if he was guilty of it the plaintiff cannot recover; if he was not guilty of it the plaintiff must recover if the accident was caused by the defendants' negligence.

[Now, the particular negligence imputed to the defendants by the plaintiff, which is charged to have been the cause of this accident, seems to be that the train was being run at an undue rate of speed, without sufficient warning to the people who had occasion to cross at this crossing. In regard to the rate of speed at which a train may be run, gentlemen, it must

be obvious that the determination of such a question must be relative to the attending circumstances. If you have a watchman at the crossing to prevent people going over, or if you have gates at the crossing which absolutely preclude anybody from going over the track while the train is approaching, such a train may go at any rate of speed it may attain without negligence, because there is absolutely no danger. If you take sufficient precautions to prevent any person from approaching the crossing when the road is being occupied by the train, it don't make any difference at what speed you go. You have a right to go at any rate of speed you please, if you make it safe for the public. That is the question, if you make it safe for the public. And no moderation of speed will avail, either, on the other hand, if every precaution is neglected which it is necessary to take for the preservation of human life and the safety of those who have occasion to cross railroads on public highways.

The question, gentlemen, in this case is, whether the death of Isaac Coon was caused by the neglect of any of these precautions; whether these cars were run at a high rate of speed, without proper warning being given to the people who had occasion to cross that track.]

Now, what kind of warning may be given or what measures are necessary in order to protect the public, are not questions of law, but questions of fact. It is obvious that a company may resort to any good device or expedient which will produce the desired result. They may, as is often done, station a watchman there who will keep off the people at hours when he knows the trains are approaching; or they may, if they are authorized by the city authorities to do that, put gates across the highway, in order to prevent vehicles and people from crossing; or they may perhaps dispense with both if their engineers are required to give sufficient long and loud warnings of some kind to passengers and to people who are about to pass over the crossing, and it is absolutely necessary that some precaution be taken in order to prevent the sacrifice of human life by trains rushing down upon crossings, to give notice to those who have occasion to go along the public thoroughfare at that point.

Now upon the present occasion the evidence is that there was no flagman at this place; he had gone home, it would seem from the evidence. It is perhaps fairly inferable from the evidence, that during the daytime, ordinarily, there is a flagman at this point, that he goes home at ten o'clock at night, and that he had gone home in accordance with his custom, at ten o'clock on that particular night. This particular place, then, therefore, had no flagman or watchman there to caution

people not to cross; and if there were any means of warning
except to ring the bell or blow the whistle, I don't remember
it in the evidence.   I don't think there is any evidence of any
precaution taken by the company to warn the public of ap-
proaching trains at this point, except it be by ringing of the
bell and the blowing of the whistle.   With regard to the ring-
ing of the bell, the plaintiff's evidence is that the witnesses
heard no bell ring at all.   Several of her witnesses testified to
that, that so far as they knew or heard, no bell was rung.   On
the other hand, people on the engine—the fireman, the engi-
neer, and the assistant fireman, for there was an assistant fire-
man on this occasion; the chief fireman not being very well,
he had an assistant; and all testified that the bell was rung as
they approached the crossing.   With regard to the whistle, it
must be conceded at least, there is no evidence to prove that
any whistle was blown at all, until the train had got almost
upon the crossing.   The whistle, according to the engineer, was
blown when he observed the man upon the track had not noticed
the bell, and when, as he says, he was fifty yards away, and the
man was in front of the engine.   Then the engineer says that,
observing that he had not noticed the bell, he blew the whistle,
when he was fifty yards from the engine.   Whether he heard
the whistle or not, or whether, hearing it, he had not time to
get out of the way, the fact was that the train came down in-
stantly upon him and crushed him to death.

Whether, gentlemen, the bell was rung and when, whether
the whistle was blown and when, and how long, are facts
which it is your province to determine and not mine.   The
question in the case is whether sufficient precautions were
taken in view of the rate of speed at which the train was actu-
ally proceeding; whether sufficient precautions were taken on
the part of the company to prevent this accident; whether they
took those precautions which are usually taken, which experi-
ence has demonstrated to be necessary in order to prevent an
accident of this kind.   [If they did take those precautions
then they are not to blame, and your verdict should be for the
defendant.   If they omitted those necessary and usual precau-
tions, and if that omission was the cause of Isaac Coon's death,
then the plaintiff is entitled to the verdict at your hands, if
you find that Isaac Coon himself, in attempting to cross the
track, exercised those ordinary precautions which a prudent
and reasonable man would exercise under the circumstances.]

The defendant excepted to that portion of the charge in-
cluded within brackets and to the charge generally, for the
reason that on the whole evidence it was the duty of the
learned judge to have instructed the jury to find for the
defendant.   Verdict for the plaintiff for $5,000 and judgment

thereon, whereupon the defendant took this writ, assigning for error those portions of the charge included within brackets, and the whole charge generally.

*Gavin W. Hart* and *David W. Sellers*, for the plaintiff in error.—1. The entire charge of the court is objectionable in that it is calculated to mislead the jury as to the duty of the railroad company at crossings. "If as a whole the charge is calculated to mislead the jury it is error:" Reeves *v.* D. L. & W. R. R., 6 Casey, 454. "If from the language of the judge, either through ambiguity or want of perspicuity, there is good reason to believe that the jury have been misled, the Supreme Court will reverse." Lack. & B. R. R. Co. *v.* Chenewith, 2 P. F. S., 382.

2. W. P. P. R. W. Co. *v.* Gallagher not reported yet, declares the principle involved in the doctrine that travellers crossing railroad tracks should "stop, look, and listen," is, that the looking and listening should be done at a point and time where and when it can be effective.

This doctrine has been carried to the extent of saying that if a traveller by wagon is about to cross at a point where his view is obstructed, he must get out and lead his horse. Penna. Railroad *v.* Beale, 23 P. F. S., 506; R. R. *v.* Feller, 3 Norris, 226.

"A traveller approaching a railroad track is bound to use his eyes and ears so far as there is an opportunity, and where by the use of these organs danger may be avoided, notwithstanding the neglect of the railroad company's servants to give signals, the omission of the plaintiff to use his senses to avoid danger is concurring negligence:" Henze *v.* R. R. 71 Mo., 636; R. R. *v.* Houston, 5 Otto, 702; Schofield *v.* R. R. 114 U. S. 615.

"It is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive." Carroll *v.* R. R., 12 W. N. C., 348.

3. The court should have withdrawn the case from the jury. "The doctrine that where there is a scintilla of evidence it must be submitted to the jury is exploded." "The more reasonable statement of the rule is, that where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the contervailing proof."

"In a case in which the court ought to say that there is no evidence sufficient to authorize the inference, then the verdict would be without evidence, not contrary to the weight of it." "Wherever this is so they have the right and it is their

duty to withold it from the jury :" Howard Express Co. *v.* Wile, 14 P. F. S., 206 ; R. R. *v.* Shay, 1 N., 198. P. & R. R. Rd. *v.* Heil, 5 W. N. C., 91.

"Negligence is always a fact for the jury when there is any doubt as to the facts or the inferences to be drawn from them." R. R. *v.* Barnett, 9 P. F. S., 259.

"Where facts are ascertained, the court may pass upon the question of negligence as a matter of law :" King *v.* Thompson, 6 N., 369.

."Where the facts are undisputed, it is not error for the court to withhold the evidence from the jury." Hoag *v.* R. R., 4 N., 293 ; R. R. *v.* Kelley, 6 Out., 115.

*P. F. Rothermel,* for the defendant in error.—1. The defendant was guilty of negligence. That a railroad company which runs its trains through a populous section of the city and over a frequented crossing, at a rate of between thirty and forty miles an hour, without blowing whistles, ringing bells, or providing gate, watchman, or any known means to warn people lawfully passing, or about to pass over that crossing, is not acting prudently, or with a due regard for the safety of others, requires no argument to establish.

Hence, in the absence of evidence showing contributory negligence upon the part of the plaintiff, he has in such cases been uniformly held entitled to recover : R. R. *v.* Lewis, 29 P. F. S. 33 ; R. R. *v.* Stinger, 28 Id. 219 ; R. R. *v.* Killips, 7 Norris, 405 ; R. R. *v.* Barnett, 9 P. F. S., 259 ; R. R. *v.* Dunn, 6 Id. 280 ; R. R. *v.* Hagan, 11 Wright, 244 ; R. R. *v.* Ogier, 11 Casey, 60 ; Reeves *v.* R. R., 6 Id. 454.

2. The deceased was not guilty of contributory negligence. " When there is no direct evidence that the traveller did not stop, look, and listen, the presumption of the law that he performed his duty will prevail :" R. & C. R. R. *v.* Ritchie, 6 Out., 425.

" As there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence upon the part of defendant. He has a right to assume that every one else will obey the law and act upon that belief :" Shearman & Redfield on Negligence, § 31, citing : Reeves *v.* R. R., 30 Pa. St., 454 ; R. R. *v.* Hagan, 47 Id., 244 ; R. R. *v.* Ogier, 35 Id., 66 ; Newson *v.* R. R., 29 N. Y., 383–391 ; Ernst *v.* R. R., 35 N. Y., 9–35 ; Gee *v.* R. R., L. R. 8, Q. B., 161–171 ; Fox *v.* Sackett, 10 Allen, 535 ; Carroll *v.* R. R., 1 Duer, 571 ; Colegrove *v.* R. R., 6 Id, 382 ; Owen *v.* R. R., 35 N. Y., 516–518 ; Harpell *v.* Curtiss, 1 E. D. Smith, 78 ; Seward *v.* Milford, 21 Wisc., 485 ; Beisiegel *v.* R. R., 34 N. Y., 622 ; Jetter *v.* R. R., 2 Abb. Ct.

Ap. 458; R. R. *v.* Shultz, 64 Ill., 172; Steele *v.* R. R., 43 Iowa, 109; Williams *v.* R. R., Id., 396; Robinson *v.* R. R., 48 Cal., 409; McWilliams *v.* Detroit Co., 31 Mich., 274; Snyder *v.* R. R., 11 W. Va., 14; Continental, etc., Co. *v.* Stead, 95 U. S., 161; Shultz *v.* R. R., 44 Wis., 638; Minor *v.* Sharon, 112 Mass., 477; Weston *v.* R. R., 73 N. Y., 595; Humphreys *v.* Armstrong Co., 56 Pa. St., 204; Rauch *v.* Lloyd, 31 Id., 358.

3. The plaintiff in error complains because the court did not usurp the powers of the jury. With the conflicting testimony in the case upon material questions of fact the court could do nothing else than submit it to the jury: R. R. Co. *v.* Barnett, 9 P. F. S. 259.

Mr. Justice STERRETT delivered the opinion of the court, January 25th, 1886.

In this as in nearly all cases of same class, the two controlling questions of fact before the court below were, 1st. Whether the death of plaintiff's husband was caused by negligence of the defendant company, and 2nd. Whether deceased himself was guilty of contributory negligence. As to the first question, it is contended the charge of the learned judge, in relation to the duty of railroad companies at public crossings, was calculated to mislead the jury: and in support of this contention, detached portions of the charge, recited in the first and second assignments of error, are specially relied on. Considering these excerpts even apart from their context, we are not prepared to say there is any material error in either of them; but, if any doubt exists as to that, it is immediately dispelled by reading them in connection with other portions of the general charge. In other words, the charge as a whole appears to be a correct and adequate presentation of the case to the jury.

After referring to the fact that Isaac Coon was killed while in the act of crossing the track of defendant company's road at Orthodox street and Trenton Avenue in the city of Philadelphia: that this action was brought by his widow to recover the pecuniary damages sustained by his death; and accurately stating the measure of damages applicable in such cases, the learned judge clearly presented and explained to the jury the two questions of fact upon which the case hinged, saying, among other things, that it was the duty of deceased, as he approached the railroad track, to stop, look and listen, and exercise that caution which a reasonable man would take to avoid danger under the circumstances; that the question therefore, with regard to him, is whether he took those precautions. If he did, he was not guilty of contributory negligence: if he neglected to do so, he was guilty and plaintiff cannot recover. If he was not guilty of contributory negligence, and the accident

was caused by defendant's negligence, plaintiff is entitled to recover. Then, and in immediate connection therewith, follows that portion of the charge which is the subject of complaint in the first specification. The learned judge then proceeded to say, " Now, what kind of warning may be given or what measures are necessary in order to protect the public, are not questions of law, but questions of fact. It is obvious that a company may resort to any good device or expedient which will produce the desired result. They may, as is often done, station a watchman there who will keep off the people at hours when he knows that trains are approaching; or they may, if they are authorized by the city authorities to do that, put gates across the highway, in order to prevent vehicles and people from crossing; or they may perhaps dispense with both, if the engineers are required to give sufficient long and loud warnings of some kind to passengers and people who are about to pass over the crossing, and it is absolutely necessary that some precaution be taken in order to prevent the sacrifice of human life by trains rushing down upon crossings, to give notice to those who have occasion to go along the public thoroughfare at that point.

" Now, upon the present occasion the evidence is that there was no flagman at this place; he had gone home, it would seem from the evidence. It is perhaps fairly inferable from the evidence, that during the daytime, ordinarily, there is a flagman at this point, that he goes home at ten o'clock at night, and that he had gone home in accordance with his custom, at ten o'clock on that particular night. This particular place, then, therefore, had no flagman or watchman there to caution people not to cross; and if there were any means of warning except to ring the bell or blow the whistle, I don't remember it in the evidence. I don't think there is any evidence of any precaution taken by the company to warn the public of approaching trains at this point, except it be by ringing of the bell and the blowing of the whistle. With regard to the ringing of the bell, the plaintiff's evidence is that her witnesses heard no bell ring at all. Several of her witnesses testified to that, that so far as they knew or heard, no bell was rung. On the other hand, people on the engine, the fireman, the engineer, and the assistant fireman, * * * all testified that the bell was rung as they approached the crossing. With regard to the whistle, it must be conceded at least, there is no evidence to prove that any whistle was blown at all, until the train had got almost upon the crossing. The whistle, according to the engineer, was blown when he observed the man upon the track had not noticed the bell, and when, as he says, he was fifty yards away, and the man was in front of the

engine.   Then the engineer says that, observing that he had
not noticed the bell, he blew the whistle, when he was fifty
yards from the engine.   Whether he heard the whistle or not,
or whether, hearing it, he had not time to get out of the way,
the fact was that the train came down instantly upon him and
crushed him to death."

"Whether, gentlemen, the bell was rung and when, whether
the whistle was blown and when and how long, are facts which
it is your province to determine and not mine.   The question
in the case is whether sufficient precautions were taken in
view of the rate of speed at which the train is actually pro-
ceeding ; whether sufficient precautions were taken, on the
part of the company to prevent this accident ; whether they
took those precautions that are usually taken, which experience
has demonstrated to be necessary in order to prevent an accident
of this kind.   If they did take those precautions then they are
not to blame, and your verdict should be for the defendant.
If they omitted those necessary and usual precautions, and if
that omission was the cause of Isaac Coon's death, then the
plaintiff is entitled to the verdict at your hands, if you find
that Isaac Coon himself, in attempting to cross the track, ex-
ercised those ordinary precautions which a prudent and reason-
able man would exercise under the circumstances."

We have thus quoted, at considerable length, from the charge
for the purpose of showing how clearly and accurately the ques-
tions involved in the case were presented to the jury, in con-
nection with the testimony bearing thereon.   To some extent
at least the evidence was conflicting, and it was undoubtedly
the exclusive province of the jury to determine what the facts
were.   If they found, in accordance with the testimony of
plaintiff's witnesses, that no timely or sufficient warning was
given to deceased of the rapid approach of the train, not even
by ringing the bell, they had an undoubted right to draw the con-
clusion that the company was guilty of gross negligence.   On
the other hand, if they found that the bell was rung as testified
to by defendant's witnesses, it is still their duty to say, whether
that, under the circumstances of the case, was sufficient warning.
Whether the ringing of a locomotive bell, without blowing the
whistle in time to avoid danger, is a sufficient warning of the
approach of a train to a public crossing depends on the cir-
cumstances, of which generally in actions for negligence, it is
for the jury to judge : Longenecker v. The Pa. R. R. Co., 105
Pa. St., 328.

The second specification of error, as will be seen, consists of
the last sentence but one, and the first clause of the last sen-
tence in the charge, omitting the qualification contained in the
last clause of the sentence.   This part of the charge was not

specifically excepted to`; but if it had been, it should be considered in connection with other parts of the charge, and especially with the qualifying clause of the last sentence. It is unfair to the court below to thus assign for error only part of a sentence. The first and second specifications are not sustained.

As to the third and last specification, it is sufficient to say the court was not requested to instruct " the jury to find for defendant." If such instruction had been asked, it would have been manifest error to have given it, under the circumstances disclosed by the testimony. The case, under all the evidence, was clearly for the jury on both of the controlling questions of fact involved therein. What constitutes negligence, in a given exigency, is generally a question for the jury and not for the court. Negligence is want of ordinary care under the circumstances. No fixed rule of duty, applicable to all cases, can be established. A course of conduct justly regarded as resulting from the exercise of ordinary care, under some circumstances, would exhibit the grossest negligence under other circumstances; the opportunity for deliberation and action, the degree of danger, and many other considerations of like nature, affect the standard of care which may be reasonably required in a particular case. When the standard shifts, not according to any certain rule, but with the facts and circumstances developed at the trial, it cannot be determined by the court, but must be submitted to the jury. There are cases, however, in which a court can determine that omissions constitute negligence; but, they are exceptional—those in which the precise measure of duty is determinate the same under all circumstances. When the duty is defined, a failure to perform it is, of course, negligence and may be so declared by the court: Schum *v.* The Penna. R. R. Co., 107 Pa. St., 8, and cases there cited. The case before us is clearly not within any of the exceptions to the general rule above stated.

Judgment affirmed.