# The Chicago, Rock Island and Pacific Railway Company

## *v.*

## William Clough.

*Filed at Ottawa October 31, 1890—Rehearing denied May 7, 1891.*

1. Negligence—*injury at railway crossing—duty of flagman to give timely warning—right of the public to rely thereon.* It is the duty of a flagman stationed at a public highway crossing by a railway company, to know and give timely warning of the near approach of trains, and the public will have a right to rely upon a reasonable performance of that duty.

2. Same—*flagman improperly signaling to cross.* It is gross negligence for the flagman of a railway company at a street crossing to signal to a traveler to drive his team and wagon upon the railway track when he knows that a passenger train is approaching the crossing without blowing a whistle or ringing a bell, and the view of the approaching train is obstructed by cars left on the side-tracks, and by buildings.

3. A count in a declaration in an action against a railway company, for negligence, resulting in a personal injury at a highway crossing, alleged an obstruction of the view from the highway by cars and buildings, and that the flagman of the company, well knowing the near approach of a train, recklessly, negligently and willfully beckoned to the plaintiff to drive upon the tracks, etc. There was proof on the trial, not only that the flagman beckoned the plaintiff to cross over the tracks, but that he did this negligently and recklessly, when he knew the train was coming : *Held,* that there was sufficient evidence to authorize an instruction based upon the negligence charged in the count.

4. Same—*signal by flagman not to cross—but not in proper time— other precautions neglected—care required of persons seeking to cross a railway track.* The mere fact that a party injured by a collision at a highway crossing was signaled by a flagman stationed there not to cross the tracks, will not relieve the railway company from liability for neglecting to lower the gates on the approach of a train, and to sound a bell or whistle, and in running its train at a rate of speed prohibited by an ordinance. if the signal to stop is not given in time for the party injured to avoid the injury by the exercise of ordinary care. *Any* warning in such a case is not sufficient to prevent a recovery.

5. In an action against a railway company the defendant asked this instruction : "If the jury believe, from the evidence, that the flagman on the crossing did not flag the plaintiff to cross the tracks at all, and

if the jury further believe, from the evidence, that he signaled the plaintiff not to cross, then the jury are instructed, as a matter of law, that the plaintiff is not entitled to recover in this case, even if the jury should also find, from the evidence, that the gates were not lowered on the crossing, that no bell was rung or whistle sounded, and that the train was moving at a rate of speed in excess of that prescribed by the ordinances of the town." The court modified the same by inserting after the words "not to cross," the words, "in time for the plaintiff, by the exercise of reasonable care, to have avoided the injury:" *Held*, that the modification was manifestly proper.

6. In such case, the defendant asked the court to instruct the jury, that if the witness, P., attempted to prevent the plaintiff from crossing, in time to avoid the injury, then there could be no recovery, which was refused as asked : *Held*, properly refused, as ignoring the question whether the plaintiff had notice or knowledge of such attempt.

7. In the same case, the defendant asked this instruction : "The jury are instructed, as a matter of law, that under the evidence in this case the plaintiff is not entitled to recover, even if the jury believe, from the evidence, that the flagman signaled him to come across the track, and if the jury also believe, from the evidence, that no bell was rung or whistle sounded, provided the jury believe, from the evidence, that the plaintiff could, by looking and listening, have discovered the approach of the train in season to avoid the accident complained of," which was refused as asked : *Held*, properly refused, as it deprived the plaintiff, as matter of law and wholly regardless of the surrounding circumstances, of the right to place any reliance upon the signals given by the flagman.

8. The court modified the instruction by striking out all after the word "plaintiff," where it last occurred, and substituting therefor the words, "did not exercise ordinary and reasonable care, under all the circumstances as shown by the evidence, to discover the approach of the train and prevent being injured :" *Held*, that the instruction, as modified, expressed the law substantially as stated by this court in prior cases.

9. Where a public street was crossed by two main tracks and twenty side-tracks of a railway company, and a flagman was stationed at such crossing to give warning of danger to any one about to cross the tracks, and plaintiff was injured by a collision in attempting to pass over the railroad tracks, it was *held*, on the trial of an action by him against the company, no error to refuse to instruct the jury that the plaintiff was under an obligation, while driving across the tracks, before driving over any particular track, to look and listen for a train that might be approaching upon any of the tracks, and that the obligation which the law imposed upon him would not be satisfied by looking and listening before driving upon the first track, but that the exercise of such care

and caution on his part should have existed while driving over all of the tracks.

10. Same—*duty of passenger to seek a safer crossing.* The mere fact that by going several blocks out of his direct course a party might have crossed a railroad at a place where there were fewer tracks and the crossing was safer, which he fails to do, does not necessarily, and as a matter of law, charge him with a want of ordinary care. This case is distinguished from *City of Centralia* v. *Krouse,* 64 Ill. 19.

11. It is not *per se* negligence in a party to attempt to pass over rail-road tracks crossing a public street generally traveled, and guarded by a watch tower, and by gates across the street on both sides of the tracks, when a watchman is also stationed there, both night and day, to warn persons of danger. To hold this negligence would be tantamount to closing the street as a public highway.

12. Evidence—*quantum of proof required.* On the trial of an action against a railway company, to recover for a personal injury while in the act of crossing the railway track in a street, the defendant asked the court to instruct the jury, that if the evidence was evenly balanced, or if it preponderated, *as to a material point,* in favor of the defendant, the finding should be not guilty, which the court modified by striking out the words "as to a material point," and then gave it: *Held,* that under the facts the instruction was properly refused, as requiring too much proof on the part of the plaintiff.

13. Pleading and evidence—*recovery upon one or more of several counts.* Where several different grounds of action as acts of negligence are alleged in several counts, the plaintiff will be entitled to recover if he proves, by a preponderance of the evidence, either ground of action. The burden is not on him to prove, by a preponderance of evidence, as a condition precedent to the right of recovery, each and all of the material acts of negligence in each and all the counts. ·

14. Practice—*specific objection—variance.* If there is a variance between the allegations of the plaintiff's declaration and the proofs, the objection should be made in the trial court, so as to afford an opportunity to amend.

15. Same—*objections to particular counts.* Instructions directing the jury to disregard the several counts in a declaration which fail to call the attention of either court or jury to any supposed defects of either of such counts, are properly refused.

16. Same—*time to object—defects in declaration.* If a declaration, or count thereof, in an action for negligence, is defective, in failing to aver due care on the part of the plaintiff, the defendant should demur, or call the attention of the court to it in some other way, before final judgment, so as to afford an opportunity to obviate the defect by amendment. Such defects are cured by the verdict.

17. Same—*special questions to jury*. There is no error in refusing to submit to the jury special questions of fact which are merely of an evidentiary character.

18. New trial—*newly discovered evidence*. Newly discovered evidence which is merely cumulative and inconclusive is no ground for a new trial.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Kirk Hawes, Judge, presiding.

Mr. Thomas S. Wright, and Mr. Robert Mather, for the appellant.

Mr. Joseph S. Kennard, for the appellee.

Mr. Justice Baker delivered the opinion of the Court:

In this action on the case for personal injuries, William Clough, the appellee, had verdict and judgment in the Superior Court of Cook county, against the appellant corporation, for $5000 damages, and that judgment was affirmed in the Appellate Court for the First District. A further appeal brings the record to this court. Very numerous grounds are urged for the reversal of the judgment, and the most important of these will be briefly considered.

Between six and seven o'clock in the evening of June 5, 1886, appellee, a butcher, was driving a horse and wagon and delivering meats to his customers in the town of Lake, in Cook county. He was going west on Forty-third street, a public highway in said town, and started to cross the railroad tracks of appellant and of the Lake Shore and Michigan Southern Railroad Company, which, at the place in question, were twenty-two in number, ran north and south, and intersected the street at right angles. To the east and west of the tracks there were gates which were operated from a tower which stood about midway between the two gates. These gates were open.

There were two main tracks, called, respectively, the "in main track" and the "out main track," and east of these were eleven side-tracks and west of them nine side-tracks, and the eleven switch-tracks on the east were blocked with cars both north and south of the street. A train of the appellant company, consisting of an engine and five or six passenger cars, approached the crossing from the north, on the "out main track." Appellee drove at a brisk trot until he reached a point just east of the "in main track," when he tried to check his horse, but was unable to do so, and the engine struck his wagon, and he was thrown out and received serious injuries.

The declaration consisted of six counts. The first charged negligence in the management of the train, and wrongful conduct of the flagman stationed at the crossing. The second charged a failure to give the statutory signals, by either ringing a bell or sounding a whistle. The third charged negligence of the flagman in his management of the gates. The fourth charged excessive speed of train, in violation of an ordinance of the town. The first additional count charged that the main track was obscured from the highway by cars on the side-tracks and by certain buildings near thereto, and that, by reason thereof, the crossing was dangerous, all of which the defendant well knew, and that defendant was guilty of negligence in approaching the crossing at a high rate of speed, etc.; and the second additional count also alleged the obstruction of the view from the highway by cars and buildings, and that the flagman of the defendant at the crossing, well knowing the near approach of the train, recklessly, negligently and willfully beckoned to the plaintiff to come on, and thereby induced the plaintiff to drive upon the tracks, etc.

The court, at the instance of the plaintiff below, instructed the jury, that if they believed, from the evidence, that the injury complained of was caused by the negligence of the defendant's servants, as charged and described in the declaration, and further believed, from the evidence, that the plaintiff, just

before and at the time of the accident, was without fault, and was exercising all ordinary and reasonable care and pru- ·dence in crossing the railroad tracks of the defendant, then the plaintiff was entitled to recover. It is strenuously urged this ·instruction was erroneous.

It appears from the record that the third count of the decla- ration was expressly withdrawn by the court from the con- sideration of the jury, and it is conceded there was evidence to go to the jury upon the first, second, fourth, and first addi- tional, counts. The objection made to the instruction is, that it submitted to the consideration of the jury all the charges .of the declaration, and informed them, in effect, that there ·was evidence tending at least to support all of its allegations. The specific claim is, that there was an entire absence of evidence tending to prove the second additional count. We do not so understand the record. Clough, the plaintiff, testi- ·fied as follows: "The gates were open, and the flagman was ·across the track, and he flagged me to come on. Well, I whipped up my horse when he flagged me to come on, and tried to get across as quick as I could. When I got flagged across, of course I thought it was all right, and I just whipped up my horse to get across as soon as I could." The train in ·question was a regular passenger dummy train, which was running on schedule time, as shown by time-card. Falsey, the flagman, was on the ground, and it was his duty to watch for and flag all trains. He was a witness for appellant at the trial, and made no claim he did not know of the near approach of the train, but, on the contrary thereof, testified he saw the wagon about the time it reached ";the furthest east track," and gave it "a signal to stop." The plain implication from these ·and other circumstances in evidence is, that he knew the train was approaching the crossing. The jury, in their special find- ings, found that the flagman first gave the plaintiff a signal to cross the tracks, and subsequently gave him a signal to stop, and that the signal not to cross was not given in time

for plaintiff to avoid the injury. Appellee was a considerable distance east of where the flagman stood, and his view was obstructed by standing cars and otherwise, and his surmise that the latter flagged him to stop "when he saw the engine," was not of controlling importance. In our opinion there was ample evidence to go to the jury tending to prove, not only that the flagman beckoned appellee to cross over the tracks, but that he did this negligently and recklessly, when he knew the train was coming. It follows from that which we have said, that there was no error in giving the instruction of which complaint is made.

The court was asked by appellant to instruct the jury, as matter of law, that the plaintiff was under an obligation, while driving across the tracks, before driving across any particular track, to look and listen for a train that might be approaching upon any of the tracks, and that the obligation which the law imposed upon him would not be satisfied by looking and listening before driving upon the first track, but that the exercise of such care and caution on his part should have existed while driving over all of the tracks. The refusal of the court to give this instruction is urged as error. A flagman was stationed at the crossing in question, and it was his duty to know and give timely warning of the near approach of trains, and appellee and the public had a right to rely upon a reasonable performance of that duty. The refusal of the court to give the instruction was fully justified by the decisions of this court in *Chicago, St. Louis and Pittsburg Ry. Co.* v. *Hutchinson*, 120 Ill. 587, and other cases.

It appeared at the trial, from the testimony of appellee, that he might have reached his destination by driving on Root street and crossing the tracks of appellant on that street, instead of crossing them on Forty-third street; that there are fewer tracks across Root street than across Forty-third street, and that the crossing there is safer, but that by so doing it would have taken him several blocks out of his way. The

court refused the request of appellant to instruct the jury, as matter of law, that it was the duty of appellee to have crossed the tracks on Root street instead of on Forty-third street, and that, as he failed to do so, the verdict should be for defendant. The ruling of the court in this behalf was not erroneous. Appellee not only had the abstract right to drive upon Forty-third street, but he traveled the usual and most direct route to his destination. The mere fact that by going several blocks out of his direct course he might have crossed the railroad where there were not so many tracks and the crossing was safer, does not necessarily and as matter of law charge him with want of ordinary care.

*City of Centralia* v. *Krouse*, 64 Ill. 19, and other like cases cited by appellant, are not here in point. In the *Krouse case* the sidewalk was positively dangerous and practically impassable, and Krouse had full knowledge of this, and it was culpable negligence in him to undertake to pass over it. In the case at bar, Forty-third street was a generally traveled thoroughfare, and the crossing was guarded by a watch-tower and by gates across the street, both east and west of the railroad tracks, and a watchman was stationed there both night and day for the purpose of warning those about to cross the tracks of approaching danger. To say it is *per se* negligence to travel such street and pass over such crossing under any and all circumstances would be absurd, and would be tantamount to closing the street as a public highway.

The court very properly refused to give instructions 16, 17, 18 and 19. These instructions, severally and respectively, directed the jury to disregard the various counts of the plaintiff's declaration, but did not assume to call the attention of either court or jury to any supposed defects or variance in respect to either of said counts. If the second and fourth counts of the original declaration contained no allegations of due care and caution on the part of the plaintiff, then appellant, if he desired to avail himself of the omissions, should

38—134 Ill.

either have interposed a demurrer, or, by other appropriate action, called the attention of the court to them at some time before final judgment. If this had been done the defects could readily have been obviated by amendments. Under the instructions given to the jury, the exercise of ordinary and reasonable care on the part of the plaintiff was made a condition precedent to the right of recovery. We must hold that the alleged defects are cured by intendment after verdict. The fallacy in the argument of appellant is the claim, that by the proffered instructions exceptions were aptly and properly taken to the defective counts. This is simply "sticking in the bark," for there was nothing in the instructions indicating a claim that the counts were defective. So, also, if there was a variance between the proofs and the first amended count, as is now claimed, in that the evidence shows the injury was received in the town of Lake, whereas the count alleges that the railway "ran through a part of the city of Chicago, * * * and crossed a certain highway *in said city,* to-wit, Forty-third street," then the specific objection there was such variance should have been made in the trial court, thereby affording opportunity for amendment. In *St. Clair County Benevolent Society* v. *Fietsam,* 97 Ill. 474, this court held that a general objection on the ground of a variance is not sufficient,—that the party objecting should point out wherein the variance exists, so as to give an opportunity for obviating the same by amendment. The instruction in this case did not show even so much as that it was based on any claim that there was a variance. *City of Mattoon* v. *Fallin,* 113 Ill. 249 ; *Wight Fire Proofing Co.* v. *Poczekai,* 130 id. 139.

Complaint is made that the court modified the third, sixth, eighth and ninth instructions asked by appellant. The substance of the third instruction, as submitted to the court, was, that if the evidence was evenly balanced, or if it preponderated, as to a material point, in favor of the defendant, the finding should be, not guilty. In many cases this instruction would

have been a correct statement of the law, but in the case before us it would have been misleading and erroneous. It is to be borne in mind that the declaration consisted of six counts, and that many different and material acts of negligence were alleged therein, one or more of them being charged in each of the several counts, and each of the counts stating a good cause of action. The instruction was not so framed as to be applicable to one count only, or to each of the counts severally. Had it been given without modification it would have imposed upon the plaintiff the burden of proving, by a preponderance of evidence, as a condition precedent to the right of recovery, each and all of the material acts of negligence contained in each and all of the counts. The court struck out the words, "as to a material point," and the instruction, as given, stated a correct proposition of law.

Instruction No. 6, as asked, was as follows:

"If the jury believe, from the evidence, that the flagman on the crossing did not flag the plaintiff to cross the tracks at all, and if the jury further believe, from the evidence, that he signaled the plaintiff not to cross, then the jury are instructed, as a matter of law, that the plaintiff is not entitled to recover in this case, even if the jury should also find, from the evidence, that the gates were not lowered on the crossing, that no bell was rung or whistle sounded, and that the train was moving at a rate of speed in excess of that prescribed by the ordinances of the town of Lake."

The court modified this instruction by inserting, after the words "not to cross," the words, "in time for the plaintiff, by the exercise of reasonable care, to have avoided the injury." The modification was manifestly proper. If the gates were not lowered on the crossing, and no bell was rung or whistle sounded, and the train was moving at a rate of speed in excess of that allowed by the ordinances of the town, then the mere fact that the flagman signaled the plaintiff not to cross the tracks would not free the appellant from culpable negli-

gence, if the signal to stop was not given in time for the plaintiff, by the exercise of reasonable care, to have avoided the injury. The claim of appellant that "any warning of the approach of a train would be sufficient to prevent a recovery," is wholly inadmissible. The very object of placing a watchman at a railroad crossing is that he may give timely warning, and thereby prevent injury to persons or property.

The eighth instruction, as asked, declared that if the witness Pickley attempted to prevent the plaintiff from crossing, in time to avoid the injury, then there could be no recovery. The instruction wholly ignored the question whether appellee had any notice or knowledge of such attempt. There was no error in refusing to give it as asked.

Instruction No. 9 was as follows:

"The jury are instructed, as a matter of law, that under the evidence in this case the plaintiff is not entitled to recover, even if the jury believe, from the evidence, that the flagman signaled him to come across the track, and if the jury also believe, from the evidence, that no bell was rung or whistle sounded, provided the jury believe, from the evidence, that the plaintiff could, by looking and listening, have discovered the approach of the train in season to avoid the accident complained of."

The court modified it by striking out all after the word "plaintiff," where it last occurs, and substituting therefor the words, "did not exercise ordinary and reasonable care, under all the circumstances, as shown by the evidence, to discover the approach of the train and prevent being injured." The instruction, as asked, deprived appellee, as matter of law, and wholly regardless of the surrounding circumstances, of the right to place any reliance whatever upon the signals given by the flagman, and it was therefore properly refused. As modified and given, it stated the law in substantial conformity with the views heretofore expressed by this court. See *Chicago,*

*St. Louis and Pittsburg Ry. Co.* v. *Hutchinson, supra,* and authorities there cited.

. Under the rule as announced by this court in *Chicago and Northwestern Ry. Co.* v. *Dunleavy,* 129 Ill. 132, there was no error in the action of the court in refusing to submit to the jury certain questions of fact for special findings thereon, since such questions of fact were merely of an evidentiary character.

The newly discovered evidence relied upon by appellant was cumulative and wholly inconclusive, and afforded no sufficient ground for awarding a new trial.

We have examined the other objections to the judgment that are urged by appellant, but they do not seem to require special notice. Suffice it to say, that we find no substantial error in the record.

The judgment is affirmed.

*Judgment affirmed.*

Subsequently, on May 7, 1891, on an application for a rehearing, the following additional opinion was filed:

Baker, J.: The only point urged for a rehearing is, that in disposing of the appeal we did not make special mention of one of the grounds which was relied on for a reversal of the judgment. The matter in question did not, as seems to be supposed, "escape the observation of the court," for it was duly considered, but we thought that the views expressed in the opinion obviated any necessity for its discussion.

At the trial, one of the witnesses was permitted to testify, over the objections of the appellant, that the flagman, in addition to attending to the crossing, was in the habit of cleaning the lamps of some eight or ten of the switchmen, for pay. It is claimed that this testimony was not only inadmissible, but clearly prejudicial to appellant. The flagman may have been in the habit of cleaning the lamps, *non constat* he ever did it while on duty as flagman, or to the neglect of his duties as such. To say that the circumstance of such lamp cleaning

was evidence tending to show that the flagman was in the habit of neglecting his regular duties in order to make money by cleaning the lamps of the switchmen in the yard, seems to be placing a forced and too broad a construction upon it.

But conceding that the fact stated was evidence tending to prove customary negligence, and that evidence of that kind was inadmissible, yet that in this particular case it worked no detriment, we think is manifest from the record. It is, as we have heretofore seen, a conceded fact that the flagman knew of the near approach of the train by which the injuries were inflicted, and, as we have also heretofore seen, the jury found in their special findings that the flagman first gave the plaintiff a signal to cross the tracks, and afterwards gave him a signal to stop, and that the signal to stop was not given in time for the plaintiff to avoid the injury. It thus affirmatively appears that the conclusion of the jury that the flagman was guilty of culpable negligence was based upon a finding of the fact, which is here conclusive, that he was guilty of the specific negligence indicated by the special findings, and which is charged in the second additional count of the declaration. Such being the case, appellant is legally bound to respond in damages to the full measure of compensation for the injuries sustained by appellee. It is therefore immaterial that incompetent testimony was admitted which tended to show that the flagman was guilty of negligence of a wholly different character from the specific negligence of which the jury convicted him.

The petition for a rehearing is denied.

*Rehearing denied.*