CORNELIUS MARNAN as Administrator of the Estate of HARTWIG STENDER, deceased, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Railroads:** CROSSING ACCIDENT: CONTRIBUTORY NEGLIGENCE. One is not necessarily guilty of contributory negligence on approaching a railway crossing in a city by failing to stop, look and listen for an approaching train. In the instant case there was evidence tending to show that no proper signal or warning of the approach of the train was given; that the flagman was not at his place of duty; that the train was being operated at an unlawful rate of speed, and that the view of an approaching train was somewhat obstructed, and it is held that the question of contributory negligence was for the jury.

**Same.** Where a railway crossing gate is open and the flagman gives

no warning there is some assurance at least that the crossing can be made in safety; and such facts have a direct bearing on the question of whether the traveler who acted upon it exercised reasonable care.

**Same:** EVIDENCE: CONCLUSION. The statement of a witness who saw deceased approaching the crossing that "I thought he was going to stop," was properly stricken as the conclusion of the witness.

**Same:** NEGLIGENCE: EVIDENCE. The evidence as to whether the flagman swung his lantern as a signal of the approaching train was in such conflict as to require submission with the other issuable facts.

**Verdict:** PASSION AND PREJUDICE. The verdict of $3,475.67 for the death of decedent, a man of sixty years of age, was not so large as to clearly indicate passion and prejudice.

*Appeal from Scott District Court.*—HON. JAS. W. BOLLINGER, JUDGE.

WEDNESDAY, JUNE 26, 1912.

ACTION at law to recover damages for the death of the plaintiff's intestate. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Carroll Wright* and *J. L. Parrish,* and *Cook & Balluff,* for appellant.

*M. V. Gannon* and *W. M. Chamberlin,* for appellee.

WEAVER, J.—While in the act of walking across the defendant's track at a public crossing in the city of Davenport, Hartwig Stender was struck and killed by a moving train. This collision, the plaintiff, who is administrator of Stender's estate, avers was caused by the negligence of the defendant in operating its train at a high rate of speed in violation of an existing city ordinance, in failing to sound proper signals, or give proper warnings of the train's

approach, and in failing to maintain proper gates or guards at the crossing. The deceased was a man of about sixty years of age and familiar with the crossing. The accident occurred about half past seven on the evening of January 22, 1909. The night was quite dark, and there was some wind and rain. The defendant had provided gates for this crossing, but at the time in question they were not being used. A flagman was also kept stationed there, but his position at the moment of the accident, and whether he was at his proper place and attending to his duties, is a matter of some uncertainty. By ordinance of the city the maximum rate of speed permitted to trains operated over and across the public streets was twelve miles per hour. Defendant's track runs east and west along the course of Fifth street; and across Warren street, which is eighty feet in width and extends north and south. East of the east line of Warren about eleven feet stands a small cabin or shanty for the flagman. Stender was seen walking south on the west side of Warren. After he had left the north curb of Fifth street, and as he neared the track, he appeared to look up, and, immediately quickening his movement, he had advanced to a point at or near the south rail when he was struck. The evidence fairly tends to show that the train was moving at considerably more than twelve miles per hour; some witnesses estimating it as high as twenty-five miles.

The flagman's testimony as to his own position at the time was not obtained. One witness thinks he saw him swinging his lantern at the middle of the crossing, but another swears that he himself was at that moment talking with him on the east side of Warren street, and that the flagman was facing to the east. The engineer in charge of the train says that, when east of the flagman's cabin from ten to twenty-five feet, he saw the deceased, and hesitated an instant about checking the speed, thinking the traveler would not walk into a collision, but almost immediately,

seeing the imminent danger, he sounded the whistle and attempted to stop, but was unable to do so in time to prevent the accident. He says that his train was not a heavy one, and if moving at fifteen miles an hour he thinks he could have brought it to a stop in from sixty to seventy feet; and that if moving at twenty miles an hour the stop might in his judgment be accomplished in eighty-five or ninety feet.

There was testimony also, though disputed, that the engine was being operated without signals by bell or whistle until immediately before the deceased was struck. It carried a headlight illuminating the track to a distance of a thousand feet or more. No one was walking with deceased, but several persons were within seeing distance. He appears to have entered upon the street crossing and failed to note the dangerous proximity of the train until very close to the instant of collision. If he stopped at any place to look or listen, no one observed the act. We find no evidence that any one saw him before he left the curb, and no witness is able to say whether he did or did not look to the east for approaching trains before he entered upon the crossing of Warren street. Defendant admits that on the evidence offered the jury could properly find there was negligence in the speed of the train. It also concedes that the question whether proper signals were given is a matter upon which there is a conflict of evidence; but counsel argue that, even if such negligence be found, it was not the proximate cause of the collision, but that such cause is to be found in the negligent act of the deceased himself in recklessly walking into danger.

Stated in other words, the chief contention on behalf of appellant is that deceased was chargeable with contributory negligence as a matter of law. The rule which makes a party negligently injured bear all the loss suffered by him, if as a matter of fact he is chargeable with any part of the blame, is, of course, too well settled in the law

of this state to be open to discussion.   Nor can there be
any doubt of the soundness of the appellant's proposition
that he who enters a known place of danger must make
reasonable use of his senses to avoid harm.   He can not
recklessly close his eyes and ears to the plain evidences of
impending peril and be entitled to damages for an injury
which, in the exercise of reasonable care, he would have
escaped.   The rule is plain enough, but its application is
by no means always self-evident.   The inquiry whether a
given act is reckless, imprudent or careless, or is reconcil-
able with that degree of care which men of ordinary pru-
dence observe under like or similar circumstances, depends
generally upon many considerations.   It is a matter of deduc-
tion, argument, and reasoning from a more or less intricate
network of facts and, as such, falls within the province of
the jury and not of the courts.

A collision with a railway train upon a highway cross-
ing on the open prairie, where no watch or guard is kept or
can reasonably be expected, and where a person approaching
on the highway has an unobstructed view of
the track for a long distance, is one thing.
A collision upon the street of a crowded city,
where speed of trains is regulated by law
or ordinance, where gates and flagmen are a reasonably
necessary provision for public safety, where the highway is
used by hundreds if not thousands of people every day,
and where an open view of the track for any considerable
distance is not ordinarily obtainable until the traveler is
within or very near the zone of danger, is quite another
thing.   In the former case one can hardly conceive how
a person using the highway and being in full possession
of his physical and mental powers can be injured by a
passing train without the most obvious negligence on his
part.   In the latter case it is by no means difficult to under-
stand how sometimes a traveler of experience and intelli-
gence may be run down and injured without being con-

1. RAILROADS:
   crossing acci-
   dent: contrib-
   tory negli-
   gence.

clusively chargeable with want of reasonable care for his own safety. Each city street is a place of danger. In every passing carriage or street car, in every defect in a side walk or crossing, in every pole and wire overhanging cornice or window cap, in every railway crossing, and in numberless other things, there are ever present threats of possible injury, yet no one would think of saying that the citizen must keep indoors at the peril of being held negligent if he assumes to use the public way. Along the walks and roadways there flows a ceaseless current of humanity, and, if each individual must stop at each crossing and wait till all possible danger has demonstrably disappeared, that current will be effectually checked, and business and social stagnation follow. Crossings afford a common way for the use of the ordinary traveler on the one hand, and of the railway on the other, and each is bound to exercise that right with due regard to the rights of the other. The highway traveler yields precedence to the railway train; but, when the crossing is clear, he is under no obligations to stop and wait unless there be a train approaching and within such distance as to indicate to his mind as a reasonable man that he can not make the passage without danger of injury. While nothing will excuse him for failing to see or hear what as an ordinarily prudent man under all circumstances he ought to see and hear, he is not necessarily chargeable with negligence as a matter of law if he places some degree of reliance upon the regulations, guards and warnings which the law or custom has provided for protection of the public of which he is a part. He may rightfully assume that a train in the distance is not approaching him at an unlawful rate of speed. *Powers v. Railroad Co.,* 143 Iowa, 432.

If a crossing gate be opened, and the flagman gives no warning, such fact has in it some of the elements of invitation on the part of the railway company, or at least partakes of the nature of an assurance of safety on its

part, and as such has a direct bearing on the question whether the traveler who acts upon it exercises reasonable care. *Doyle v. Railroad Co.,* 145 Mass. 386 (14 N. E. 461); *Palmer v. Railroad Co.,* 112 N. Y. 241 (19 N. E. 678); *French v. Railroad Co.,* 116 Mass. 537; *Sonier v. Railroad Co.,* 141 Mass. 10 (6 N. E. 84); *Pennsylvania Co. v. Stegemeier,* 118 Ind. 305 (20 N. E. 843, 10 Am. St. Rep. 136); *Sweeney v. Railroad Co.,* 92 Mass. 368 (87 Am. Dec. 644); *Railroad Co. v. Clough,* 134 Ill. 586 (25 N. E. 664, 29 N. E. 184); *Railroad Co. v. Schneider,* 45 Ohio St. 678 (17 N. E. 321); *Railroad Co. v. Coon,* 111 Pa. 430 (3 Atl. 234).

*2. Same.*

Indeed, giving effect to the law of the cases here cited, and of numerous other precedents to the same point, every fact contended for by the appellant as to the conduct of the deceased may be conceded without making the case one for a directed verdict on the ground of contributory negligence. It stands conceded that there was evidence of neglect in the matter of the speed of the train and of the omission of the statutory signals. It is also conceded that the gates were not in use, and that a flagman had been provided. There is also conflict in the evidence as to whether the flagman was giving attention to his duty as the train approached.

In the *French* case, *supra,* where a person relying upon the absence of signals undertook to make the crossing without looking for the train at a place where she might have seen it, it was held that the question of contributory negligence was for the jury. A similar rule was applied by the Ohio court in the *Schneider* case, above cited. In *Railroad Co. v. Stegemeier, supra,* it was held by the Indiana court that an open gate and absence of a flagman constituted such an affirmative assurance of safety that a traveler could not be charged with negligence as a matter of law because he undertook to make the crossing without

taking the precautions usually required of one about to enter upon a railway track. This we think is the rule of reason as well as of law. If the public may not assume, that the laws and ordinances enacted for its protection will be observed and that open gates and an absent or inactive flagman is an indication of safety to the traveler about to cross the track, then all devices will operate less as safeguards to the traveler than as traps by which he will be lured to his destruction.

There is no evidence in the record tending to show that deceased did not look for trains before leaving the Fifth street curb. Whether there be any presumption that he did so we need not consider. To say the least, there is no presumption that he did not look. If he did look, and saw or ought to have seen the train, he was not necessarily negligent in attempting to cross; for, under the evidence as to its speed, it must have then been at such distance that, had the ordinance of the city been observed, he would have cleared the track in ample time to avoid the collision. There is no proof that he knew or could readily have noted the speed of the train's approach, and, as we have already said, he could rightfully assume that it was not excessive. Even as it was, he was within a single step or two of safety when struck, and the evidence clearly justifies a finding that, had the train been moving within the ordinance limit, he had abundant time to cross. Under essentially similar circumstances, we have held that a traveler thus injured is not guilty of contributory negligence as a matter of law. *Powers v. Railroad Co.*, 143 Iowa, 432.

There was no error, then, in the refusal of the trial court to set aside the verdict on that ground.

The court instructed the jury with reference to the so-called doctrine of the "last fair chance." The contention for appellant in this respect is that there was no evidence on which such an instruction could properly be pred-

icated. The members of the court are equally divided as to whether it was error to submit the question to the jury under the record.

A witness, having testified that he saw deceased walking from the curb toward the track, added, "I thought he was going to stop," and the statement was stricken out on plaintiff's objection. Error is also assigned on this ruling. While the answer might well have been permitted to stand, we think the ruling was not erroneous. The witness does not say that he drew the inference of which he speaks from anything in the appearance, attitude, or movement of the deceased, or state any fact to indicate that this expression, "I thought he was going to stop," refers to anything else than his own mental process. Had he said that "Stender acted as if about to stop," or that "he hesitated and looked around as if about to stop," or other words of similar import, it would come much nearer to admissibility under the rule rendering competent testimony which partakes of conclusion with reference to the personal appearance of one whose conduct is under inquiry. But the witness does not say this or its equivalent, nor was he further interrogated to bring out an explanation of his statement. The exception taken can not be sustained.

3. Same: evidence conclusion.

The court, in stating the negligence charged in the petition, recited the allegation to the effect that the flagman negligently failed to swing his lantern in warning of the approach of the train. This is said to be erroneous because it was shown without dispute that the flagman was in his proper place and did swing his lantern. The record is not so clear in this respect as argued by counsel. As we have already said, one witness does testify that the flagman was in the middle of the street swinging his lantern; but another, who says he was talking with the flagman at that moment, locates him on the east side of the street facing

4. Same: negligence: evidence.

east. While this witness says he does not know whether the flagman was swinging his lantern, he adds that he did not see him do it. No other witness testifies on the subject. The record, we think, leaves the situation upon this feature of the case in sufficient uncertainty to justify the court in leaving it with other issuable facts for the consideration of the jury.

It is finally argued that the verdict of $3,475.67 is excessive. We think the recovery is not so large as to clearly indicate passion and prejudice on the part of the jury, and we are not at liberty to interfere with it.

5. VERDICT: passion and prejudice.

There is no error in the record requiring a new trial, and the judgment of the district court is—*Affirmed.*