# Union Show Case Co. v. Adam Blindauer.

1. MASTER AND SERVANT—*Right of Servant to Follow Directions of Master as to Use of Defective Machinery.*—A servant, though having knowledge of the defective condition of machinery, yet has the right to assume, in the absence of notice to the contrary, that it is reasonably safe for him to follow the command of his master in regard to the use of such machinery. His knowledge of the defective condition does not necessarily charge him with knowledge of the dangers arising therefrom.

2. SAME—*Defective Condition of Machinery—Notice of Danger Arising.*—Facts in regard to a defective condition of machinery which do not necessarily operate to charge a servant with notice of the danger arising from such condition may operate to charge the master with such notice. The obligation upon each arising from mere knowledge of the defective condition is not alike.

3. SAME—*Defective Machinery—Master Should Know Whether it is Dangerous or Not.*—If machinery or premises are obviously defective, but not apparently dangerous, the master may be liable for not having taken the necessary steps to ascertain whether they were or were not in fact safe.

4. VARIANCE—*Should be Called to the Attention of the Trial Court.*—A variance which could have been obviated by amendment in the trial court can not be availed of for the first time in a court of appeal.

5. EXPERT TESTIMONY—*As to the Operation of an Elevator Governor, Admissible.*—Whether an elevator governor would under certain circumstances, if in good working order, operate to stop the elevator, and within what distance it would so operate, are matters which can not be determined merely from a recital of its mechanical structure, without some special skill and knowledge of the workings of such machinery, and the admission of expert evidence on such a question, in a proper case, is not error.

**Trespass on the Case**, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the March term, 1898. Affirmed. Opinion filed April 18, 1898.

## STATEMENT OF THE CASE.

Appellee sued appellant, his employer, to recover for personal injuries sustained, as alleged, through negligence of appellant. Verdict and judgment resulted in favor of appellee for the sum of $2,500.

At the time of the injury appellant was engaged in manufacturing upon the third, fourth and fifth stories of a building in Chicago.    Appellant rented of George C. Mages, and, together with Mages, used a freight elevator in the rear of the building.    It was an ordinary freight elevator, and had attached under its floor a safety apparatus, controlled by a governor, with dogs on each end of a rod, so adjusted that, whenever the elevator should be overloaded or should fall, these dogs would be thrown out, and, catching in the guide strips on either side, stop the elevator.    To this rod, on the ends of which the dogs were fixed, was attached a shank which was connected at the end by a swivel movement with a rod which ran up through the floor of the elevator.    By pressing down with the foot on the end of this rod the dogs were released, thus enabling the operator to release the dogs when they became set.    There was no one regularly employed to run the elevator.    It was used by the employes of appellant and employes of Mages whenever they had occasion to use it in the discharge of their respective duties.

At the time of the injury, and for some time before, the elevator was out of repair, in that the dogs, which operated to stop the downward movement, frequently became set of their own action and without any pressure upon the lever by the operator, and in that when the car was released, if the cable was slack, the governor sometimes failed to operate to again stop its descent.    This defective condition was known to appellant.    Appellee was aware that at times the dogs became thus set.    There was evidence to establish that appellant was made aware that as a result of the stopping of the elevator by such irregular action of the dogs, the drum upon which the cable ran sometimes kept on revolving, thus loosening some amount of the cable and leaving it slack (unless attended to and taken up); and that when the elevator was started with the cable thus slack, the governor did not always operate, as it should if in proper condition, to again set the dogs.    The danger arising from starting the elevator downward with an amount of the cable thus loose and slack, while known to appellant is not shown to have

been known to appellee. Appellee testified that the president of appellant, Hechinger, instructed him when the dogs became set to pound down the rod and release them. Hechinger did not deny this, but testified that he also instructed appellee to first see that the cable was taut, which appellee denied.

At the time of the injury appellant had employed John Blondet, a laborer, to take up to the fourth floor certain lumber, etc. Blondet had taken a load up in the elevator and unloaded at the fourth floor. While there the dogs became set, and when Blondet attempted to start the elevator it did not move. Appellee was working near the elevator. He saw the difficulty which Blondet was having in starting the elevator and went to his assistance. There was a considerable amount of slack cable, and when appellee put his foot upon the rod and released the dogs the car started downward, the governor failed to act so as to again stop its descent, and the car fell to the basement. Blondet was killed, and appellee was injured. The drum upon which the cable turned could not be seen from the place on the fourth floor where appellee started the elevator.

From October 14, 1890, the date of the injury, until some time in the following December, appellee was confined to his home. There was a fracture of the right ankle and injury to the left leg. There were slight injuries to the head. The most serious injury, and the only one permanent in character, was an injury to the back. As to this, the physicians testified that the symptoms were entirely subjective, and two of them testified that from such symptoms there seemed to be an injury to the spine which was incurable.

The declaration alleged that at the time of the injury, appellee " had occasion to use said elevator for the purpose of carrying freight," etc.

BULKLEY, GRAY & MORE, attorneys for appellant.

It is an elementary rule of law that the allegations and proofs must correspond in order to entitle a party suing to recover. Chicago & A. R. R. Co. v. Michie, 83 Ill. 427.

Before a servant can recover from his master for an injury caused by defective machinery or apparatus, he must establish three propositions : First, that the appliance was defective; second, that the master had notice of the defect, or ought to have had; third, that the servant did not have such notice.   Goldie v. Werner, 151 Ill. 551; Hines Lumber Co. v. Ligas, 68 Ill. App. 523.

A servant assumes the ordinary hazards of his employment and the master's obligation is not to supply the servant with absolutely safe machinery or appliances, or machinery or appliances of any particular kind, but his obligation is to use ordinary and reasonable care not to subject the servant to unreasonable danger.   Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Chicago, R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 41; Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 332; Chicago Anderson Pressed Brick Co. v. Sobkowiak, 38 Ill. App. 531; Jones v. Roberts, 57 Ill. App. 56.

As a general rule the servant will be regarded as voluntarily incurring the risk resulting from the use of defective machinery, if its defects are as well known to him as to the master.   St. Louis & S. E. Ry. Co. v. Britz, 72 Ill. 256; Pennsylvania Co. v. Lynch, 90 Ill. 333; Simmons v. Chicago & T. R. R. Co., 110 Ill. 340; Chicago Drop F. & F. Co. v. Van Dam, 149 Ill. 337; East St. Louis, I. & C. S. Co. v. Crow, 155 Ill. 74; Chicago, B. & Q. R. R. Co. v. Smith, Adm'x, 18 Ill. App. 119; Kolb v. Sandwich E. Co., 36 Ill. App. 419; Illinois Cen. R. R. Co. v. Swisher, 53 Ill. App. 411; Clay v. Chicago, B. & Q. R. R. Co., 56 Ill. App. 235; McAleenan & Co. v. Myrick, 68 Ill. App. 225.

An employe takes upon himself the hazard of the use of defective tools, machinery or apparatus if, after his employment, he knows of the defects, but voluntarily continues in the employment and in the use of such defective appliances without objection and without promise of repair.   Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Pennsylvania Co. v. Lynch, 90 Ill. 333; Simmons v. Chicago & T. R. R. Co., 110 Ill. 340; Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 332; Chicago, B. & Q. R. R. Co. v. Merckes, 36 Ill. App. 195; Glass v. Chicago, R. I. & P. Ry. Co., 41 Ill. App. 87.

A person who voluntarily and unnecessarily puts himself in a well known place of danger to life or body, but for which position he could not have been injured, and who is injured or killed in consequence of such exposure, even through the gross negligence of the defendant (if the act of the latter is not wanton or willful), is guilty of such contributory negligence as to preclude any recovery by him or his personal representative. Abend v. Terre Haute & I. R. R. Co., 111 Ill. 202.

If there was any defect in the elevator in question appellee knew it as well as appellant; and if appellant was negligent in not furnishing a different apparatus, appellee was equally negligent not only in continuing to use it without objection, but also at the time of the accident in voluntarily going upon the elevator, knowing that it was stuck and refused to descend, and without his duty calling him there. Pennsylvania Co. v. Lynch, 90 Ill. 333.

Proof that a passenger was injured while exercising ordinary care is not sufficient to raise the presumption of negligence against the carrier, unless it is further shown that the cause of the injury was in some manner within the carrier's control. Chicago City Ry. Co. v. Rood, 163 Ill. 477.

A servant is not entitled to recover because the service was dangerous and the master failed to notify him of that fact, in consequence of which he is injured, when it does not appear that the master knew that it was dangerous. Chicago, R. I. & P. Ry. Co. v. Clark, 108 Ill. 113.

Expert and opinion evidence is never competent where the circumstances can be fully and adequately described to the jury and are such that their bearing on the issue can be estimated by all men without special knowledge or training. Auberle v. City of McKeesport, 36 Atl. Rep. 212.

BURTON & REICHMANN, attorneys for appellee.

It has been repeatedly held by the courts that the operation of an elevator is controlled by the same principles of law that apply to common carriers. The operator of an elevator is a common carrier in the law, and therefore, so

far as strangers are concerned, at least, he is bound to exercise the highest degree of care known to the law in its maintenance and operation. Treadwell v. Whittier, 80 Cal. 574, and cases there cited.

While it is possible that the same degree of care is not required in reference to the maintenance and operation of an elevator used by employes, yet a high degree of care, relatively, is required. The degree of care required of a master in furnishing tools, appliances and premises to his employes is comparative, and depends upon the character of the same and their uses in each case. The more dangerous they are, and the more certain to result in injury or loss of life in the event of a failure to provide such as are suitable and safe, the greater the degree of care exacted. Chicago A. P. B. Co. v. Sobkowiak, 38 Ill. App. 539.

While it is true that the defendant was required to exercise only ordinary care, yet, ordinary care implies such watchfulness and precaution as are proportioned to the dangers to be avoided, measured by the standard of common prudence and experience. Kain v. Smith, 89 N. Y. 384.

An elevator is necessarily a dangerous machine; dangerous in the sense that injury is almost certain to result to those using it in the event of its machinery becoming out of order or repair. Wise v. Ackerman, 25 Atl. Rep. 424.

" When machinery operates upon scientific principles that are not obvious, a common laborer is not presumed to have knowledge of the principles of operation."

On the other hand, " The master is presumed to have knowledge of the principles upon which his machinery works, and therefore of the consequences likely to arise from defects of which he had notice." Pennsylvania Coal Co. v. Kelly, 54 Ill. App. 622.

" It is the duty of the employe to take notice of that which is obvious and to use his senses with reasonable care and diligence." Pennsylvania Coal Co. v. Kelly, 156 Ill. 16.

" A servant is chargeable with notice of what is apparent, but not necessarily that the apparent is dangerous."

Pennsylvania Coal Co. v. Kelly, 54 Ill. App. 622; 156 Ill. 16; Illinois Steel Co. v. Schymanowski, 162 Ill. 459.

The servant, in entering upon an employment, assumes only such risks as he has notice of, either express or implied; and it is culpable negligence in the master to fail to notify him of the risks which are not patent and of which he has no cognizance from the nature of the employment. Consolidated C. Co. v. Wombacher, 134 Ill. 57; United States R. S. Co. v. Wilder, 116 Ill. 111; Citizens G. L. & H. Co. v. O'Brien, 118 Ill. 174; Illinois Steel Co. v. Schymanowski, 162 Ill. 461.

A servant must take notice of manifest and obvious defects, but this notice can not deprive him of his right to recover, unless the risks incident to such defects are equally manifest and obvious. The servant must not only have knowledge of the defect but also of the danger that is likely to result therefrom, and a knowledge of the defect does not as a matter of course charge him with knowledge of the danger. Illinois Steel Co. v. Schymanowski, 162 Ill. 456; Consolidated C. Co. v. Haenni, 146 Ill. 614; McCormick H. M. Co. v. Burandt, 136 Ill. 170; Bailey on Master and Servant, 184; Cook v. St. Paul, M. & M. Ry. Co., 34 Minn. 45; Davidson v. Cornell (N. Y.), 30 N. E. Rep. 573.

An objection as to variance, such as can be obviated or avoided by evidence or amendment of the pleading, is waived unless made in the trial court. Chicago, R. I. & P. Ry. Co. v. Clough, 134 Ill. 594.

Nor is it sufficient to simply urge the variance, but it is incumbent upon the defendant to indicate and point out in what it consists, so as to enable the court to pass upon the question intelligently, and also to enable the plaintiff to so amend his pleading as to make it conform with the evidence. Lake Shore & M. S. Ry. Co. v. Ward, 135 Ill. 516.

The motion at the close of plaintiff's case was, " to return a verdict of not guilty, on the ground that plaintiff had not made a case as laid in the declaration." This clearly was insufficient to save the point.

Therefore, the question before this court is simply whether the plaintiff has a right to recover upon the evidence, disassociated from the allegations of the declaration. McCormick H. M. Co. v. Burandt, 37 Ill. App. 165.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.

Counsel for appellant contend :

First. That appellee was injured through his own negligence.

Second. That the danger which caused the injury was an assumed hazard.

Third. That there is a variance fatal to the judgment, in that the declaration avers that appellee was injured when he had occasion to use the elevator to carry freight, while the proof shows that he was not at the time so using it, but was merely assisting another employe of appellant in starting the empty elevator downward.

Fourth. That the trial court erred in admitting incompetent testimony, and in refusing to give the fifth, tenth, eleventh and twelfth instructions tendered by appellant.

Fifth. That the verdict is excessive.

It is uncontroverted that Hechinger, the president of appellant, instructed appellee to force down the rod to release the dogs which held the elevator whenever they became set. The fact that they did frequently become set, without direction of the operator and through the defective condition of the machinery, was known alike to appellee and appellant. There is no evidence that either of them was specially skilled in mechanism of this sort. Neither is there any evidence that appellee was informed as to the danger attending this defective condition of the machinery. There is, however, evidence that Hechinger was informed specifically of such danger. A witness, Duffy, testified that the elevator had fallen once before and injured a man, of which fact Hechinger knew, and that on another occasion, three or four weeks before the accident, " I was on the third floor attending to my duties as shipping clerk, when a packer, shouted up the shaft for me to come down. I went down

and found twenty to twenty-five feet of cable unwound from the drum, and the drum was still revolving and throwing it off. I ran to the elevator and pulled the rope and stopped it, and shouted up the shaft if there was any one on the elevator to get off, for they were liable to be killed. I made lots of noise doing so. Next morning I had a conversation with Mr. Hechinger in reference to that. Mr. Hechinger wanted to know what I was making all that noise about yesterday afternoon, and I said I had good reason to make a noise. I said if they pounded back that dog some one surely would have been killed. He asked me how it was and I told him about the cable becoming unwound from the drum, and he kind of shook his head and said that was bad. There was nothing done after that in the way of fixing up or repairing the elevator up to the time of the accident."

Hechinger did not directly deny this statement as to the conversation. He did testify, " at no time prior to the time of the accident did I know or learn of anything the matter with the elevator." The jury were warranted in discrediting this statement of Hechinger, for his previous testimony contradicted it by establishing that he did know that the safety device became set irregularly. He testified : " I didn't tell him (appellee) if the dog was out to drive it in, not until he had started the elevator up to see if there was any slack of the cable, and then he could drive the dog in." Appellee testified : "All I was told was to drive in the dog when it is out. I was not told to pull the elevator upwards or downwards. I did not receive any other instructions at all. Mr. Hechinger told me, ' Pound the dog in, in case it is out.' " Kecheisen, the superintendent, testified : " I told him (appellee) if the dogs came out or the elevator would not work, not to touch it; to notify the parties below, Mr. Mages." The jury were justified, however, in discrediting this testimony, for all the evidence showed that the irregular setting of the dogs was of so common and frequent occurrence that it would have been very strange had appellee been instructed upon each of such occasions to go to the

landlord for aid.   On the contrary it is undisputed that Hechinger, the president, instructed him to act in the matter by releasing the set dogs.

Appellee, though having knowledge of the defective condition of the machinery, yet had the right to assume, in the absence of chargeable notice to the contrary, that it was reasonably safe for him to follow the command of the master and release the car in the manner directed.   His knowledge of the defective condition did not necessarily operate to charge him with knowledge of the dangers therefrom arising.   Illinois Steel Co. v. Schymanowski, 162 Ill. 456; Bailey on Master and Servant, 184.

Nor is there any evidence in this case which necessarily operates to charge appellee with notice of the dangers which would follow the carrying out of the master's directions.

But the facts which do not necessarily operate to charge appellee, the servant, with notice of the danger, may operate to charge appellant, the master, with such notice.   The obligation upon each arising from the mere knowledge of the defective condition is not alike.   Illinois Steel Co. v. Schymanowski, *supra.*

"If the machinery or premises are obviously defective, but not apparently dangerous, the master may be liable for not having taken the necessary steps to ascertain whether they were or were not in fact safe."   Wood on Master and Servant, Sec. 336.

It can not, therefore, be said that the conduct of appellee was such as to establish, as a matter of law, contributory negligence upon his part.   On the contrary, it was a question for the jury, with ample evidence to sustain the conclusion reached by them.

The foregoing consideration disposes also of the second point urged, viz., that the danger in question was an assumed hazard.

It surely could not be held that the defective condition of this elevator was an ordinary risk incident to the employment.   Neither, if the doctrine of assumed hazard may be so applied, could it be said that the dangers arising from

this unusual defect were known or should have been known to appellee, and hence they were assumed by him. Moreover, in conducting himself in relation to the defective apparatus, appellee followed the specific directions of the master, upon the reasonable safety of which he might properly rely.

The contention that the variance between declaration and proof as to what particular duty appellee was discharging when injured may be now availed of, can not be maintained. It was the duty of appellant to call the attention of the trial court to this variance. It is not a matter which goes to appellee's right of action but merely to the particular pleadings here. Appellee might equally recover whether he was engaged in carrying freight when injured, as alleged, or engaged in aiding another in starting the elevator for the purpose of carrying freight, as proved. In either case he was in the discharge of duty and following the master's instructions. The superintendent, Kicheisen, testified: " I told him (appellee) to look after the elevator, to see that there was no stranger that handled it." This variance can not be for the first time availed of in this court; for it could have been obviated by amendment in the trial court. Wabash, St. L. & P. Ry. Co. v. Coble, 113 Ill. 115; Chicago, R. I. & P. Ry. Co. v. Clough, 134 Ill. 586; McCormick H. M. Co. v. Burandt, 136 Ill. 170.

The fifth instruction, which tells the jury, in effect, that if appellee knew that something was wrong with the elevator, and did not promptly cease using it, he can not recover, was properly refused. It makes no distinction between knowledge that the safety appliance worked defectively and knowledge of the dangers therefrom arising.

The tenth instruction is as follows:

" The court instructs the jury that if they believe from the evidence that plaintiff voluntarily went upon the elevator in question, without his duty calling him there, or being directed to go there by his employers, for the purpose of assisting John Blondet to handle the same, knowing that there was something wrong with the elevator, then and in

that case he can not recover in this action, and your verdict should be for the defendant."

A jury might question, upon receiving this instruction, whether it were the going upon the elevator voluntarily, "without his duty calling him," or the going with knowledge "that there was something wrong with the elevator," which would bar a recovery. There being no conflict in the evidence as to the circumstances under which appellee assisted Blondet, and it being undisputed that he was acting within the line of his duty, the instruction was misleading and improper in its charge as to the former, viz., acting beyond the line of his duty, and it was erroneous in law as to the latter, viz., the effect of his knowledge of some defect. The court did not err in refusing to give it.

The eleventh instruction is as follows :

"If the jury believe from the evidence in this case that the accident in question was occasioned by the carelessness . or negligence of the plaintiff or of John Blondet in handling or managing the elevator in question, and not from any defect in the construction of the elevator, or in its being out of repair, of which defect or want of repair the defendant's officers or agents had notice or knowledge, then your verdict must be for the defendant."

The jury had been sufficiently charged as to the effect of appellee's negligence, if any, upon his right of recovery, by the eighth instruction. The fault of this instruction is, that it charges in effect, that if the accident was the result of the joint operation of negligence of Blondet and a defective condition of the machinery, of which appellant had no actual notice or knowledge, although perhaps chargeable with notice, yet no recovery could be had. It was not error to refuse to so instruct.

The twelfth instruction is, in part, as follows:

"If the plaintiff had the same notice or knowledge of defects in said elevator that the officers or agents of the Union Show Case Company did, and continued to use the same without objection, then he can not recover in this case, and your verdict must be for the defendant."

As applied to the facts here, this is not the law, and the instruction was properly refused. Illinois Steel Co. v. Schymanowski, *supra.*

It is complained that the trial court erred in admitting, over objection, certain opinion evidence.

A witness, Jollings, an elevator builder, was examined as to what the operation of the governor would be if the elevator was dropped by releasing the dogs when there was slack cable. No specific objection is made to any hypothetical questions put as to the facts assumed; the only objection now urged being that it was a matter readily determinable by the jury, and not calling for opinion evidence.

We think that the evidence was properly admitted. Whether the governor would in such case, if in good working order, operate to stop the car, and within what distance it would so operate, were matters which could not be determined merely from a recital of the mechanical structure, without some special skill and knowledge of the workings of such machinery. The decisions cited by appellant are in cases where it was sought to obtain the opinion of witnesses as to the safety or danger of certain conduct or conditions, and are not in point.

Finally, it is contended that the verdict is excessive. If it could be said that the evidence did not warrant a finding that appellee had sustained a permanent injury to the spine, it might be well urged that the sum here awarded was in excess of the loss by reason of temporary inability to labor. But there is the testimony of appellee that he still suffers from what he describes as pain "in the small of the back." He testified: "I have it to-day yet; it has continued during all that time. It is not as severe now as it was then. If I do some heavy lifting I find out afterwards it was too heavy, and I couldn't go to work the next morning, and often two or three days I have stayed home that I wasn't able to go down." His physician, Dr. Wetherle, testified: "From my examination of the patient and my treatment and diagnosis, I should say that the matter with his back

was a concussion of the spine.  I have treated him off and on since that time.  I think it is permanent.  I don't think there is any cure for it," etc.  Dr. Downey testified :  "On several occasions I tested in different ways, and satisfied myself that there was a tenderness in that particular part of the spine, etc.  From my examination, I should say that the man was suffering from an injury to the spinal cord, at least he is suffering from an injury to the spine in some form," etc.

Dr. Sherwood, called by appellant, was of opinion that the facts indicated no spinal injury.  We can not say that the jury were not warranted, from a fair consideration of all the evidence, in finding that there was a permanent injury; and upon such a finding the verdict would not be excessive.

The judgment is affirmed.